**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 20, 2010

No. 09-30035

Lyle W. Cayce
Clerk

FELTON BRADLEY; LUCILLE BRADLEY

Plaintiffs - Appellants

v.

ALLSTATE INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM and STEWART, Circuit Judges, and \*ENGELHARDT, District Judge.

CARL E. STEWART, Circuit Judge:

ON PETITION FOR PANEL REHEARING AND PETITION FOR REHEARING EN BANC: The original opinion in this case was issued by the panel on May 11, 2010. No active judge of this court having requested a poll (FED. R. APP. P. 35; 5TH CIR. R. 35), the petition for rehearing en banc is DENIED. The petition for panel rehearing is GRANTED to the extent that we VACATE our previous opinion (606 F.3d 215 (5th Cir. 2010)) and replace it with the following. In all other respects, the petition for panel rehearing is DENIED.

---

\* District Judge of the Eastern District of Louisiana, sitting by designation.

No. 09-30035

## OPINION

This appeal involves an insurance dispute arising from the total destruction of Felton and Lucille Bradley's home as a result of flood and wind damage suffered during Hurricane Katrina. The Bradleys' homeowners policy with Allstate Insurance Company carried a dwelling limit of $105,600. The Bradleys have received $105,139.06 in total insurance payments for their dwelling—$41,339.06 under their Allstate homeowners policy and $63,800 from their flood insurance policy. The Bradleys filed suit against Allstate, alleging that they were entitled to the full limits under their homeowners policy and additional payments for loss of personal property, additional living expenses, mental and physical distress, and Allstate's bad faith. The district court determined that, despite the total loss provision of the homeowners policy, the Bradleys were only entitled to the actual cash value of their home. The district court found that the actual cash value of the home prior to its destruction was less than the total amount they received under their homeowners and flood policies, and any further recovery by the Bradleys would amount to a double recovery. The district court further held that the Bradleys had not advanced any evidence in support of their other claims. The district court awarded the Bradleys some relief as to additional living expenses, but granted summary judgment in favor of Allstate on all other claims. We AFFIRM in part and VACATE and REMAND in part.

This appeal presents the following issues: (1) whether the total loss or actual cash value provision of the policy controls; (2) the proper definition of actual cash value under Louisiana law; (3) how to determine whether the insured has received a double recovery, i.e., collected insurance proceeds in

2

excess of actual losses; and (4) whether the district court erred by granting summary judgment on the Bradleys' claims for loss of personal property, additional living expenses, mental and physical distress, and bad faith.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Prior to Hurricane Katrina, the Bradleys owned and resided at a house located at 2637 Tennessee Street, New Orleans, Louisiana. The property was insured under a homeowners policy issued by Allstate and a separate flood policy issued by Fidelity National Insurance Company. Like many homeowners policies, the Bradleys' homeowners policy specifically excluded flood damage. The homeowners policy contained coverage limits of $105,600 for the dwelling, $73,920 for the contents, and $10,560 for other structures.

Hurricane Katrina destroyed the Bradleys' home in August 2005. A few badly damaged concrete blocks were the only structural component of the house left on the property. The Bradleys notified Allstate of their loss and filed a claim on September 1, 2005. Allstate first sent an engineer to inspect and adjust the loss on December 22, 2005. The engineer's report concluded that "the structure has been destroyed from a combination of hurricane winds and flooding." On two later occasions, Allstate again sent engineers to adjust the claim. On January 5, 2006, one of those Allstate adjusters concluded that "the dwelling is unlivable due to Catastrophic Wind Damage."

Allstate ultimately paid $41,339.06 for structural damage and $10,632 for contents under the homeowners policy. From their flood insurance, the Bradleys received the policy limits of $63,800 for structural damage and $6,200 for home

contents. Thus, the total payment to the Bradleys for structural damage to their home under both policies was $105,139.06.

Allstate subsequently performed a retroactive analysis that appraised the pre-storm market value of the Bradleys' home at $85,000. At deposition, Mr. Bradley testified that the pre-storm value of the home was between $85,000 and $95,000, and Mrs. Bradley testified that the pre-storm value was in the neighborhood of $97,000. An expert hired by the Bradleys estimated the cost to rebuild the home at $265,427.

To date, the Bradleys have not rebuilt their Tennessee Street house, although Mr. Bradley stated at deposition that he intends to rebuild. In order to benefit from government assistance through the Road Home program, the Bradleys attested that they will rebuild and return to the property. The Bradleys did purchase another home in New Orleans East for $134,500, but they have not designated that home as a replacement property.

**B. Procedural History**

On May 30, 2007, the Bradleys filed suit against Allstate in Louisiana state court; Allstate removed the case to federal court based upon diversity jurisdiction.  The Bradleys claimed that Allstate breached the insurance contract, acted negligently, and acted in bad faith. They further alleged that under the Louisiana's Value Policy Law (VPL), they were entitled to the full policy limits from Allstate, without deduction or offset. The complaint specifically sought to recover: (1) the policy limits under their homeowners insurance, because their home was rendered a total loss; (2) additional recovery for loss of their personal property; (3) additional living expenses (ALE); (4) compensation for mental anguish and emotional distress related to Allstate's

No. 09-30035

handling of their homeowners claim for structural damage; and (5) damages for Allstate's alleged bad faith pursuant to LA. REV. STAT. §§ 22:1220 and 22:658.[1]

Through a series of orders addressing multiple motions for partial summary judgment, motions to reconsider, motions in limine, and *sua sponte* granting summary judgment, the district court awarded the Bradleys an amount less than they claimed for ALE and granted summary judgment in favor of Allstate on all other claims. The court held that the Bradleys were only entitled to the actual cash value (ACV) of their home, which was less than the amount they received under their homeowners and flood policies combined. On the VPL claims, the court found that although the Bradleys "allege that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind or any other peril covered under the homeowners policy." The court also dismissed the Bradleys' claims for loss of personal property for failure to introduce evidence of ownership or the value of the items claimed. The mental and emotional distress claims were rejected for failure to advance any evidence of mental anguish or emotional distress. With regard to the Bradleys' bad faith claims, the court found that Allstate had fully paid the Bradleys' claims under the policy and therefore there was no "valid, underlying, substantive claim."

The Bradleys filed this appeal, arguing that the district court erred in granting summary judgment. The Bradleys contend that summary judgment was improper because: (1) the district court ignored the plain language of the insurance contract providing for the payment of policy limits in the event of a

---

[1] This provision has been recently recodified as § 22:1892, but is referred to here as § 22:658.

No. 09-30035

total loss; (2) used the wrong measure of value to determine their scope of recovery; (3) improperly allowed Allstate to offset its payments with the Bradleys' recovery from their flood insurance; (4) failed to consider the weight of the evidence regarding lost personal property and ALE; and (5) wrongly dismissed the Bradleys' bad faith, mental anguish, and emotional distress claims.

## II. STANDARD OF REVIEW

"This court reviews a district court's grant of summary judgment *de novo*." *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009). We also review *de novo* the district court's interpretation of state law and give no deference to its determinations of state law issues. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 239–40 (1991). Summary judgment is appropriate when "the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All the facts and evidence must be taken in the light most favorable to the non-movant. *Breaux*, 562 F.3d at 364.

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The non-moving party must do more than simply deny the allegations raised by the moving party. *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992). Rather, the nonmovant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.*

## III. DISCUSSION

6

No. 09-30035

## A. Structural Damages

### 1. The Insurance Contract: "Total Loss" Provision

Under Louisiana law,[2] an insurance policy "constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." *Peterson v. Schmiek*, 98-1712, p. 4 (La. 3/2/99), 729 So. 2d 1024, 1028. "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." *Id.* (citing LA. CIV. CODE art. 2047). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *Smith v. Am. Family Life Assur. Co. of Columbus*, 584 F.3d 212, 215–16 (5th Cir. 2009) (citing LA. CIV. CODE art. 2046).

---

[2] When sitting in diversity, this Court applies the substantive law of the state. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). As stated in *In re Katrina Canal Breaches Litigation*:

> To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. *See id.* In the absence of a final decision by the Louisiana Supreme Court, we must make an *Erie* guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. *See id.* In making an *Erie* guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. *Id.* (quoting *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)); *Prytania Park Hotel, Ltd. v. Gen. Star Indem. Co.*, 179 F.3d 169 (5th Cir. 1999). "Jurisprudence, even when it rises to the level of jurisprudence constante, is a secondary law source in Louisiana." *Prytania Park Hotel*, 179 F.3d at 169 (footnote omitted); *see also Am. Int'l Specialty Lines Ins. Co.*, [352 F.3d 254, 261 (5th Cir. 2003)] (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). Thus, although we will not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them. *Am. Int'l Specialty Lines Ins. Co.*, 352 F.3d at 261.

*Id.*

No. 09-30035

A contract is ambiguous only if its terms are unclear or susceptible to more than one reasonable interpretation, or the intent of the parties cannot be ascertained from the language employed. *Cadwallader v. Allstate Ins. Co.*, 2002-C-1637, p. 4 (La. 6/27/03); 848 So. 2d 577, 580. Where an insurance policy includes ambiguous provisions, the "[a]mbiguity . . . must be resolved by construing the policy as a whole; one policy provision is not to be construed separately at the expense of disregarding other policy provisions." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (quoting *La. Ins. Guar. Ass'n. v. Interstate Fire & Cas. Co.*, 93-0911 p. 5  (La. 1/14/94); 630 So. 2d 759, 763); LA. CIV. CODE art. 2050. "Words susceptible of different meanings must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV. CODE art. 2048. "Ambiguity may also be resolved through the use of the reasonable-expectations doctrine, 'by ascertaining how a reasonable insurance policy purchaser would construe the clause at the time the insurance contract was entered.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d at 206 (quoting *La. Ins. Guar. Ass'n*, 93-0911 at p. 6, 630 So. 2d at 764).

"If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who furnished the policy's text and in favor of the insured finding coverage." *Peterson*, 98-1712 at p. 5; 729 So. 2d at 1029 (citing LA. CIV. CODE. art. 2056). "The purpose of liability insurance is to afford the insured protection from damage claims. Insurance contracts, therefore, should be interpreted to effect, not deny, coverage." *Id*. at p. 4; 729 So. 2d at 1028 (citing *Yount v. Maisano*, 627 So. 2d 148 (La. 1993)).

No. 09-30035

With these principles in mind, we turn to a review of the insurance policy at issue. The Allstate homeowners policy states in pertinent part:

5. How We Pay for a Loss
Under Coverage A - Dwelling Protection, payment for covered loss will be by one or more of the following methods:
. . .
b) Actual Cash Value. If you do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property regardless of the number of items involved in the loss.

You may make a claim for additional payment as described in paragraph "c" . . . if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c) Building Structure Reimbursement. Under Coverage A—Dwelling Protection and Coverage B—Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild, or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment . . . .

If you replace the damaged building structure(s) at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above . . . .

e) In the event of the total loss of your dwelling and all attached structures covered under Coverage A—Dwelling Protection, we will

No. 09-30035

pay the limit of liability shown on the Policy Declarations for Coverage A—Dwelling Protection.[3]

The section of the homeowners policy referenced in 5(e), *Coverage A Dwelling Protection*, provides as follows:

> *Coverage A*
> *Dwelling Protection*
>
> *Property We Cover Under Coverage A:*
> 1. Your dwelling including attached structures. Structures connected to your dwelling by only a fence, utility line, or similar connection are not considered attached structures.
> . . . .
>
> *Losses We Cover Under Coverages A and B*:
>
> We will cover sudden and accidental direct physical loss to property described in Coverage A—Dwelling Protection and Coverage B—Other Structures Protection except as limited or excluded in this policy.
>
> *Losses We Do Not Cover Under Coverages A and B*:
>
> We do not cover loss to the property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection consisting of or caused by:
>
> 1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.
> . . .
>
> 23. We do not cover loss to covered property described in Coverage A—Dwelling Protection or Coverage B—Other Structures Protection when:
>> a) there are two or more causes of loss to the covered property; and
>> b) the predominant cause(s) of loss is (are) excluded under Losses We Do Not Cover, items 1 through 22 above.

---

[3] The policy limit of liability shown on the Policy Declarations for Coverage A—Dwelling Protection is $105,600.

No. 09-30035

Without addressing the section 5(e) total loss provision, the district court held that the measure of the Bradleys' recovery was the ACV under 5(b). The Bradleys argue that—contrary to the determination of the district court—section 5(e) of their homeowners policy is the controlling provision in the event of a total loss,[4] and the total loss provision entitles them to the full policy limits of their homeowners policy. Allstate claims that the plain and unambiguous language of section 5(e) renders it inapplicable where the total loss was caused in part by a non-covered peril such as a flood.[5]

The critical language of section 5(e) provides that "payment for *covered loss* will be by one or more of the following methods . . . In the event of a total loss of your dwelling and all attached structures covered under Coverage A—Dwelling Protection, we will pay the limit of liability . . . ." (emphasis added). The total loss provision unambiguously applies only when the total loss is caused by a covered peril. It is undisputed that the Bradleys' home was "destroyed from a combination of hurricane winds and flooding" due to Hurricane Katrina. Thus,

---

[4] When the cost to repair exceeds the value of the property, the property is considered a total loss. *Real Asset Mgmt., Inc. v. Lloyd's of London*, 61 F.3d 1223, 1229 (5th Cir. 1995) (citing *Dumond v. Mobile Ins. Co.*, 309 So. 2d 776, 778 (La. Ct. App. 3 Cir. 1975)). It is undisputed that the Bradleys' home was rendered a total loss by Hurricane Katrina.

[5] Although Allstate argues on appeal that the prefatory language to section 5(e) requires that the loss have been caused by a covered peril, Allstate did not argue this interpretation of the contract of insurance before the district court. Similarly, the Bradleys have not argued the applicability of section 23 of the policy. Although issues not raised before the district court are generally waived, "an argument is not waived on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *In re Liljeberg Enters., Inc.*, 304 F.3d 410, 428 n.29 (5th Cir. 2002). Here the Bradleys' policy was before the district court. Louisiana law requires that we read the policy as a whole, construing its words and phrases "using their plain, ordinary and generally prevailing meaning." *Cadwallader*, 2002-1637 at p.3; 848 So. 2d at 580. We are not bound to overlook the relevant provisions of the policy only because the parties failed to point to them.

the Bradleys' loss was due in part to a non-covered peril under section 1—flood. Under section 23, however, if wind, rather than flood, was the *predominant* cause of loss—as the Bradleys argue—then the loss is covered and subject to the section 5(e) total loss provision.

The relevant question therefore becomes whether a non-covered peril was the predominant cause of the loss. This contested issue of fact has not been addressed by the district court.[6]

The district court did not address the total loss provision under section 5(e), instead granting summary judgment to Allstate based on ACV under section 5(b). Additionally, because the issue was not presented to it, the district court did not evaluate the applicability of section 5(e) based on whether the Bradleys' loss was predominantly caused by a covered peril, as required by section 23. Accordingly, we remand so that the district court may evaluate the causation issues and ascertain the applicability of the section 5(e) total loss provision.

2. Louisiana Insurance Law: Actual Cash Value

The district court found that the ACV of the Bradleys' home was $97,000 because the market value of the Bradleys' home at the time that it was destroyed did not exceed $97,000. Allstate contends that the district court correctly determined the ACV of the Bradleys' home based on its pre-storm value and

---

[6] Based on our review of the record, the Bradleys have likely proffered sufficient evidence to meet their summary judgment burden of proof on the issue of causation under *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 295 (5th Cir. 2009). An Allstate civil engineer's December 2005 report concluded that "the structure [had] been destroyed from a combination of hurricane winds and flooding." An Allstate adjuster's January 2006 report concluded that "the dwelling is unlivable due to Catastrophic Wind Damage." The Bradleys also assert that a neighbor, Bryce Egan, stayed behind through the storm and witnessed the Bradleys' house being destroyed before the arrival of flood waters.

No. 09-30035

appropriately held that they were not entitled to recover further payment under their homeowners policy. The Bradleys argue that ACV is properly calculated as the replacement value of the home less depreciation, but that—regardless— ACV is not the correct measure of their potential recovery.

"The touchstone for . . . determining actual cash value is the basic principle that an adequately insured person should incur neither economic gain nor loss when his property is destroyed . . . ." *Bingham v. St. Paul Ins. Co.*, 503 So. 2d 1043, 1045 (La. App. 2 Cir. 1987). The homeowners policy does not define ACV. Louisiana law defines ACV as "reproduction cost less depreciation." *Hackman v. EMC Ins. Co.*, 07-552, p. 7–8 (La. App. 5 Cir. 3/25/08); 984 So. 2d 139, 143 (citing *Real Asset Mgmt.*, 61 F.3d at 1228 n.7); *see also* La. Dept. Ins., Insurance Bulletin No. 06-06 ("ACV is the amount needed to repair or replace the damaged or destroyed property, minus the depreciation.").[7] ACV is determined by calculating the cost of duplicating the damaged property with new materials of like kind and quality, less allowance for physical deterioration and depreciation. *Real Asset Mgmt.*, 61 F.3d at 1230–31.[8] Actual cash value is

---

[7] *Available at* http://www.ldi.state.la.us/docs/CommissionersOffice/legal/Bulletins/ Bul06_06_Cur_CommercialAndHomeown.pdf.

[8] In *Bingham v. St. Paul Ins. Co.*, the Louisiana Court of Appeals explained:
   This court had occasion to establish the definition of the term "actual cash value" as limited by the term "not exceeding the amount which it would cost to repair or replace the property with material of a like kind and quality." In *Mercer v. St. Paul Fire and Marine Insurance Company*, 318 So. 2d 111 (La. App. 2d Cir. 1975), we approved the assessment in *Reliance Insurance Company v. Board of Supervisors, Louisiana State University Agricultural and Mechanical College*, 255 F. Supp. 915 (E.D. La. 1966), that in determining actual cash value, the court should consider original cost, possible appreciation and depreciation, the nature of the property lost and the current replacement cost. This court further stated that "[t]he touchstone for the court in determining actual cash value is the basic principle that an adequately insured

not necessarily synonymous with market value at the time of the loss. *Id.* at 1227–28.

Thus, ACV is computed as the cost of replacing the building as it existed at the time of the accident, taking into account the replacement costs within a reasonable time after the accident, minus depreciation. The district court erred by calculating ACV based on the pre-storm market value of the house and holding that there were no disputed issues of material fact regarding the ACV of the Bradleys' home.  Accordingly, we remand so that the district court may properly calculate the ACV of the Bradleys' home.

3. Louisiana Insurance Law: No Double Recovery

An insured party in Louisiana may generally "recover under all available coverages provided that there is no double recovery." *Cole v. Celotex*, 599 So. 2d 1058, 1080 (La. 1992) (quoting 15A *Couch on Insurance* § 56:34 (2d ed. 1983)); *see also Albert v. Farm Bureau Ins. Co.*, 940 So. 2d 620, 622 (La. 2006) (". . . Louisiana law does not allow for double recovery of the same element of damages."). The fundamental principle of a property insurance contract is to indemnify the owner against loss, that is "to place him or her in the same position in which he would have been had no [accident] occurred." *Berkshire Mut. Ins. Co. v. Moffett*, 378 F.2d 1007, 1011 (5th Cir. 1967). Consequently, "while an insured may not recover in excess of his actual loss, an insured may recover under each policy providing coverage until the total loss sustained is

person should incur neither economic gain nor loss when his property is destroyed by fire."
503 So. 2d at 1045.

No. 09-30035

indemnified." *Cole*, 599 So. 2d at 1080 (quoting Appleman, *Insurance Law and Practice* § 5192 (1981)).

a. *Measure of Loss for Purposes of Determining Double Recovery*

As discussed above, the district court incorrectly found that the ACV of the Bradley's home was $97,000 because the evidence established that the market value of the Bradleys' home did not exceed $97,000 at the time that it was destroyed by Hurricane Katrina. The court held that because the Bradleys had already collected $105,139.06 from flood and homeowners coverage combined, any additional recovery would amount to a double recovery. Relying upon *Cole v. Celotex*, the district court therefore held that the Bradleys were not entitled to further recovery as a matter of law.

Allstate contends that the Bradleys were not entitled to recover any further payment under their homeowners policy because they have already recovered the ACV of the property, relying on the incorrect definition of ACV.[9] Any further payment, Allstate insists—and the district court found—would amount to a double recovery and windfall to the Bradleys. The Bradleys argue that the district court should have used their expert's estimate of the "cost of

---

[9] As stated above, the correct measure of ACV under Louisiana law is replacement cost minus depreciation. Further, Allstate's position that actual loss for purposes of double recovery should be based on the pre-storm market value of the home would effectively invalidate the total loss provision of the policy. The policy limits and premium for the policy reflect Allstate's estimate of the home's pre-storm value. *Real Asset Mgmt.*, 61 F.3d at 1227–28. Yet according to Allstate's interpretation, if the home were completely destroyed by wind, then Allstate would *still* not be required to pay the policy limits ($105,600) because the payment would exceed the pre-storm value ($97,000). This reads the total loss provision out of the contract and amounts to a windfall for Allstate. Such a construction does not reflect the intent of the parties, as expressed by the words of the policy. *See* LA. CIV. CODE art. 2049 ("A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective.").

No. 09-30035

rebuild or replace" as the proper measure of damages for determining whether there has been a double recovery.

In order to determine whether there has been a double recovery by an insured party, the court must ascertain actual loss relative to amounts already recovered under the homeowners policy and other insurance coverages. In the context of evaluating double recovery—or whether any of the insured's losses remain uncompensated—the insured's scope of recovery is measured by the actual loss, not by the total amount of insurance coverage.

A review of decisions under Louisiana law demonstrates that actual loss has alternately been measured by the cost of repair, replacement, or ACV—depending on the circumstances of each case.[10] Recovery for up to the amount of replacement costs turns on whether those additional costs have been or will be incurred. Using replacement costs as the measure of actual loss only in such limited circumstances squares with the general principles of double recovery; replacement costs constitute recovery of a different element of damages than ACV. *See Albert*, 940 So. 2d at 622 ("Louisiana law does not allow for double recovery of the same element of damages"). Where contested, the proper measure of actual loss, like the measure of recovery under the policy, is a

---

[10] The district courts of the Eastern District of Louisiana, presiding over the bulk of the Louisiana Hurricane Katrina insurance disputes, have adopted varying positions. *See Davis v. Allstate Ins. Co.*, No. 07-4572, 2009 WL 122761 (E.D. La. Jan. 15, 2009) (measuring the scope of loss for double recovery purposes by "the value of the property" without articulating how the value is determined); *Creecy v. Metro. Ins. Co.*, 06-9307, 2008 WL 4758625 (E.D. La. Oct. 30, 2008) (analyzing double recovery in terms of total cost of repair to insured's home); *Johnson v. State Farm Fire & Cas. Co.*, No. 07-1226, 2008 WL 2178059 (E.D. La. May 19, 2008) (measuring scope of loss for double recovery purposes by cost of rebuilding destroyed home); *Wellmeyer v. Allstate Ins. Co.*, No. 06-1585, 2007 WL 1235042, at *3–4 (E.D. La. Apr. 26, 2007) (noting a dispute of fact as to whether the "value" was properly characterized by pre-storm actual cash value or some other measure of value).

No. 09-30035

question of fact. *See Bennett v. State Farm Ins. Co.*, 2003-1195, p. 4–6 (La. App. 3 Cir. 3/24/04); 869 So. 2d 321, 325–26 (question of fact whether, under insurance coverage, carport required repair or replacement); *Higginbotham v. New Hampshire Indem. Co.*, 498 So. 2d 1149, 1151–52 (La. App. 3 Cir. 1986) (question of fact whether, under insurance coverage, roof required repair or replacement).

Here, however, it is undisputed that the Bradleys have not repaired, rebuilt, or replaced the Tennessee Street property within the two-year period allowed under the policy and Louisiana law. *See Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010) ("Versai's claim for replacement costs likewise was properly dismissed because Versai has not completed repairs on its property as required by the insurance policy."); La. Dept. Ins., Directive 195.[11] Thus, as a matter of law, the appropriate measure of the Bradleys' actual loss is the ACV of the property—not the cost to rebuild or replace the property. The fact-finder must determine, or the parties may stipulate, the ACV of the property.[12] Subtracting insurance payments already

---

[11] *Available at* http://www.ldi.state.la.us/docs/commissionersoffice/legal/directives/ Dir195_ Cur_ExtensionOfTimePerio.pdf.

[12] For example, if the fact-finder decides that the Bradleys' expert's estimate of $265,427 in replacement costs is reasonable, then that figure subject to depreciation may provide the basis for calculating ACV.

17

received[13] results in the losses still recoverable under the homeowners policy, subject to the policy limits.

Because the district court treated ACV as synonymous with the pre-storm market value of the Bradleys' home, it incorrectly held that there was no evidence suggesting the Bradleys had uncompensated losses.

### b. *Covered v. Excluded Losses*

The Bradleys additionally argue that because of the mutually exclusive nature of the wind and flood policies, the distinct coverages preclude double recovery for the same element of damages. They assert that the district court erred in its order-of-operations; after the court determines which contractual provision of the policy controls, the Bradleys claim that the district court's next step must be evaluating whether the losses resulted from covered or excluded causes. They aver that only after the fact-finder[14] segregates damages caused by

---

[13] The double recovery rule applies to *all available coverages*—an insurer may not benefit from offsets for payments received by the insured from the United States Small Business Association (SBA) or Road Home Program. *See Cole*, 599 So. 2d at 1080 (an insured may "recover under all available coverages provided that there is no double recovery"). Rather, the SBA and Road Home programs are government incentives to return to New Orleans and to offset the costs of returning home where the costs associated with returning far exceed the amounts recoverable to insureds under their policies. *See Metoyer v. Auto Club Family Ins. Co.*, 536 F. Supp. 2d 664, 670-71 (E.D. La. 2008) (Louisiana Recovery Authority benefits paid to insured homeowner do not result in a credit against homeowners insurance liability because "it could not have been the intention of the Federal Government grant writers, or the Louisiana Legislature that insurance companies should benefit from the provisions of the LRA").

[14] Generally, it is the task of the fact-finder to apportion the damage caused by wind and the damage caused by flood. *Dickerson*, 556 F.3d at 295. As we explained in *Dickerson*:

Under Louisiana law, the insured must prove that the claim asserted is covered by his policy. Once he has done this, the insurer has the burden of demonstrating that the damage at issue is excluded from coverage. Thus, once [the insured] proved his home was damaged by wind, the burden shifted to [the insurer] to prove that flooding caused the damage at issue, thereby excluding coverage under the homeowners policy. As no one disputes that at least some

wind and those caused by flood, will it be discernible whether there will be a double recovery by the insured. The district court's summary judgment ruling addressed the issue of double recovery first, and granted summary judgment before reaching the contested issue of causation.

An insured "whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover twice for the same loss." *Johnson v. State Farm Fire & Cas. Co.*, No. 07-1226, 2007 WL 2178059, at *2 (E.D. La. May 19, 2008) (citing *Weiss v. Allstate Ins. Co.*, No. 06-3774, 2007 WL 891869, at *2 (E.D. La. Mar. 21, 2007)). Insureds are entitled to recover any previously uncompensated losses that are covered by their homeowners policy and which, when combined with their flood proceeds, do not exceed the value of their property. *Id.* The homeowners and flood insurance policies provide distinct coverages; each protects against a different form of damage. *See Ferguson v. State Farm Ins. Co.*, No. 06-3936, 2007 WL 1378507, at *4 (E.D. La. May 9, 2007) ("While it is true that plaintiffs paid for two separate policies, one homeowners and one flood, that does not equate to double coverage in the event of a given loss. The flood policy is not excess insurance. Instead, it covers a loss not covered by the homeowner policy."). The interplay between the segregation of flood and wind losses and the double recovery rule ensures that proper adjustment by the

---

of the damage to the [the insured's] home was covered by the homeowners policy, [the insurer] had to prove how much of that damage was caused by flooding and was thus excluded from coverage under its policy.

*Id.* (internal citations omitted).

No. 09-30035

insurance companies or segregation of covered and excluded damages will, in theory, prevent the insured from receiving a double recovery.[15]

But payments under flood policies, like any insurance disbursement, may not always be entirely accurate. Fundamentally, Allstate and the Bradleys dispute who receives the potential windfall from an overpayment by the flood policy.[16] As the Bradleys advocate, by first segregating losses into those covered by wind and flood, and allowing the insured to collect all the proceeds for losses caused by wind—regardless of prior payments from flood insurance—the insured would receive the benefit of an overpayment by the flood insurance. If the insured were to collect flood overpayments plus the correct wind payments, recovery under wind and flood insurance coverages combined would exceed actual losses; the insured would be receiving an unlawful double recovery.

Therefore, the district court first evaluates whether the insured has already been fully compensated by payments under wind and flood insurance.

---

[15] As discussed in *Ferguson*:

Plaintiffs achieved full coverage by having two policies, so that either homeowner or flood insurance would cover any loss in full, or at least to the value they selected in their contracts. Plaintiffs could have purchased more insurance coverage on either policy by paying higher premiums. By choosing a lower level of coverage, the plaintiffs assumed some of the risk of any potential loss for the benefit of a lower premium. . . .

*Ferguson*, 2007 WL 1378507, at *4.

[16] The Bradleys' flood policy is a write-your-own policy under the National Flood Insurance Program (NFIP). The purpose of the NFIP is "to provide flood insurance protection to property owners in flood-prone areas under national policy promulgated by the Federal Emergency Management Agency (FEMA)." National Flood Insurance Act of 1968, Pub. L. No. 90-448, §§ 1302–1376, 42 U.S.C. §§ 4001–4028. Congress also adopted a program to permit insurance companies to write their own flood insurance policies, remitting the premiums to the National Flood Insurance Administration. *See* 44 C.F.R. § 62.23–.24. Write-your-own companies draw money from FEMA through letters of credit to disburse claims. *Id.* Consequently, United States Treasury funds are used to pay the insured's claims. *See* *Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir. 1988).

No. 09-30035

If the court concludes that the homeowners' insurer is not liable for further payments to the insured because additional payments would result in a double recovery, then the homeowners' insurer effectively receives the benefit of the overpayment by the flood insurance. Whether "the flood insurance overpayments . . . would have to later be returned to the federal government is not at issue here. . . ." *Ferguson*, 2007 WL 1378507, at *5 n.34. But it is worth noting that the benefit will not necessarily serve to enrich the insurer, because NFIP policies contain a subrogation clause providing:

> Whenever we make a payment for a loss under this policy, we are subrogated to your right to recover for that loss from any other person. That means that your right to recover for a loss that was partly or totally caused by someone else is automatically transferred to us to the extent that we have paid you for the loss . . . . If you make any claim against any person who caused your loss and recover any money, you must pay us back first before you may keep any of the money.

44 C.F.R. § 61.13 app. A(1), § VII(S) (2002).

Because Louisiana's double recovery bar prevents the insured from recovering in excess of actual loss, a district court does not necessarily err by evaluating double recovery prior to the resolution of disputed issues of causation. Where the value of the property in question has been conclusively established, a district court may find as a matter of law that the insured is limited to a specific recovery. *Lambert v. State Farm Fire & Cas. Co.*, 568 F. Supp. 2d 698, 703 (E.D. La. 2008) (citing *Broussard v. State Farm Fire & Cas. Co.*, No. 06-8084, 2007 WL 2264535, at *5 (E.D. La. Aug. 2, 2007)). But where the insurer has not conclusively established the value of the property—as here—the court cannot find as a matter of law that the insured is limited to a specific recovery based on the insurer's asserted valuation of the property. *Id.*

No. 09-30035

c. *Application of the Policy's Total Loss or ACV Provision and No Double Recovery*

For the reasons discussed above, depending on the factual determinations of the district court on remand as to the predominant cause of the damage to the Bradleys' property, either: (1) the total loss provision in section 5(e) will dictate that the Bradleys are entitled to recover the full policy limits for covered losses; or (2) the ACV provision in section 5(b) will dictate that the Bradleys are entitled to recover the ACV of their home, replacement cost minus depreciation. Under either section 5(e) or (b), the Bradleys' recovery will be subject to the prohibition against double recovery.[17] In some instances, whether additional recovery leads to a double recovery depends on whether actual loss is calculated based on rebuilding or replacement costs, or ACV. The appropriate measure of actual loss does not present a question of fact here, however, because the allowable period for the Bradleys to recover rebuilding or replacement costs has expired and they have failed to rebuild or replace—therefore ACV is the proper measure of actual loss as a matter of law. Upon remand, the fact-finder must arrive at the proper figure for ACV to establish the amount of actual loss. As long as the Bradleys' combined recovery under their homeowners and flood policies is less than their actual loss, then the double recovery rule does not preclude the Bradleys from receiving additional compensation under their homeowners policy.

Assuming the double recovery rule does not bar further payments to the Bradleys, then they are entitled to recover up to the policy limits of the

---

[17] The Bradleys have recovered $41,339.06 for structural damage and the policy provides for recovery up to $105,600; the policy therefore allows for further recovery of up to $64,260.94 for covered losses.

homeowners policy.[18] But while the Bradleys would preliminarily be entitled to recovery, deductions may be made by Allstate for excluded losses.[19] The losses attributable to excluded events, specifically flood-related damages, raise factual questions inappropriate for summary judgment. Under the *Dickerson* framework, Allstate bears the burden of establishing how much of the total loss is attributable to flood damage. *Dickerson*, 556 F.3d at 295. The Bradleys' policy, of course, contains one additional, crucial limitation: by the explicit terms of the contract, Allstate is liable for no more than the stated policy limits regardless of the extent of the Bradleys' loss.

## B. Louisiana Revised Statutes §§ 22:658 and 22:1220

The Bradleys asserted claims for bad faith and mental and physical distress under Louisiana Revised Statutes §§ 22:658 and 22:1220 related to uncompensated loss for damage to their home.

A cause of action for penalties under § 22:658 requires a showing that: (1) the insurer has received satisfactory proof of loss; (2) the insurer fails to tender payment within thirty days of receipt thereof; and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause. LA. REV. STAT. ANN. § 22:658. With respect to mental anguish damages, "[t]he conduct prohibited in R.S.

---

[18] Even if the ACV of the Bradleys' home is less than the policy limits recoverable under the total loss provision, recovery of the policy limits would not amount to a double recovery on that basis alone. Rather, here the total loss provision functions as a stipulation as to the amount of the ACV in the event of a total loss.

[19] It is important, however, "to distinguish between this dispute over which force totally destroyed a home and cases in which the parties disagree as to the causes of various damaged elements of a home. Distinct elements of damage would have to be considered separately. Flood-damaged carpets, for example, would not bar recovery for a wind-damaged roof." *Kodrin v. State Farm Fire & Cas. Co.*, 314 F. App'x 671, 675 n.15 (5th Cir. 2009).

No. 09-30035

22:658(A)(1) is virtually identical to the conduct prohibited in R.S. 22:1220(B)(5): the failure to timely pay a claim after receiving satisfactory proof of loss when that failure to pay is arbitrary, capricious, or without probable cause." *Sher v. Lafayette Ins. Co.*, 2007-2441 p. 26 (La. 4/8/08); 988 So. 2d 186, 206 (quoting *Reed v. State Farm Mut. Auto Ins. Co.*, 03-0107, p. 12 (La. 10/21/03); 857 So. 2d 1012, 1020). Thus, "a plaintiff attempting to base her theory of recovery against an insurer on [§§ 22:658 and 22:1220] must first have a valid, underlying, substantive claim upon which insurance coverage is based." *Clausen v. Fid. & Deposit Co. of Md.*, 95 0504, p. 3 (La. App. 1 Cir. 8/4/95); 660 So. 2d 83, 85.

The district court did not speak to the arbitrariness of the insurer's failure to pay; it instead granted summary judgment in favor of Allstate on the §§ 22:658 and 22:1220 claims based on its conclusion that the Bradleys had not carried their burden of establishing a valid, underlying breach of contract. Because the §§ 22:658 and 22:1220 claims are inextricably intertwined with the underlying breach of contract claims, we do not reach the question of entitlement to recovery under §§ 22:658 and 22:1220. We have held that the district court improperly granted summary judgment on the issue of the uncompensated structural damages and we therefore vacate the grant of summary judgment on the §§ 22:658 and 22:1220 claims as well, and remand for reconsideration consistent with this opinion.

## C. Loss of Contents of the Home

The Bradleys initially filed a loss of contents claim for $36,378, which included loss of jewelry, two flat-screen televisions, digital recording equipment, DVD equipment, VCRs, computers, leather jackets, and a mink coat. The claim relied upon the original purchase price of these items rather than their ACV as

24

No. 09-30035

required under the policy.[20] Mr. Bradley signed a "Personal Property Inventory Loss Form" for that amount on February 20, 2006. Mrs. Bradley testified that they were unable to obtain verification for many of the items on the list. Allstate determined that only $14,877.39 worth of the claimed contents were recoverable without further documentation. After deducting for depreciation, Allstate paid the Bradleys $10,632.43, and requested additional documentation as to the remaining contents.

During the discovery process, Allstate propounded the following interrogatory:

Interrogatory No. 13

Provide an itemized statement of all damages sought against Allstate Insurance Company in this action of any kind or nature whatsoever, including, but not limited to, any and all compensatory damages, penalties and otherwise, and identify all documents relating thereto.

With respect to their contents claim, the Bradleys answered "contents in the amount of $14,877.16." The Bradleys never attempted to amend their answer pursuant to Rule 26(e), nor have they argued that this response was error.

Based on the Bradleys' failure to put forth any summary judgment evidence of the value of the specific items claimed and the answer to Interrogatory No. 13, the district court concluded that there was no genuine issue of material fact regarding uncompensated loss of contents, and granted

---

[20] The section of the policy, "What You Must Do After A Loss," provides in part:

    (c) separate damaged from undamaged property. Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the actual loss claimed.

    (d) give us all accounting records, bills, invoices and other vouchers, or certified copies which we may reasonably request to examine and permit us to make copies.

summary judgment in Allstate's favor on this issue. Allstate asserts that the district court correctly held that no material facts are in dispute regarding the Bradleys' claim for uncompensated loss of contents. The Bradleys claim that the original, handwritten two-page loss of contents list totaling $36,878 establishes a genuine issue of material fact regarding their recovery under the homeowners policy.

Ordinarily, an affidavit in conjunction with a list of lost contents suffices to raise a genuine issue of material fact. *Lambert*, 568 F. Supp. 2d at 709. In response to Allstate's motion for summary judgment, however, the Bradleys did not offer even an affidavit as to the value of their lost contents. The failure to advance any Rule 56(c) proof, together with the concession in their interrogatory response,[21] demonstrates that no genuine issue of material fact exists as to the value of the lost contents. Therefore, the district court did not err in concluding that Allstate was entitled to judgment as a matter of law on the claim for loss of contents.

## D. Additional Living Expenses

The policy provides for ALE as follows:

1. Additional Living Expense

---

[21] Although interrogatory responses are not binding judicial admissions, FED. R. CIV. P. 33(c), they may be used as evidence for assessing summary judgment, FED. R. CIV. P. 56(c). *See Mahler v. Klein Karoo Landboukooperasie*, No. 94-10635, 1995 WL 371037, at *4 n.3 (5th Cir. June 5, 1995) (unpublished) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 136 n.23 (5th Cir. 1992)). Federal Rule of Civil Procedure 56(c) provides that "if the pleadings, *the discovery and disclosure materials on file*, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." (emphasis added); *see also Kohler v. Jacobs*, 138 F.2d 440, 441 (5th Cir. 1943) ("[I]nterrogatories are in the nature of evidence, and . . . may be considered on a motion for summary judgment under Rule 56.").

No. 09-30035

a) We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover under Coverage A–Dwelling Protection, Coverage B–Other Structures Protection or Coverage C–Personal Property Protection makes your residence premises uninhabitable.

When the Bradleys evacuated, they initially went to a relative's home in Alabama. Allstate advanced $850 to the Bradleys shortly after the evacuation. After approximately two or three weeks, the Bradleys moved to Phoenix City, Alabama, and lived in a hotel that was paid for by FEMA for two weeks. The Bradleys then moved to an apartment in Phoenix City, where they lived for three or four months. The Bradleys presented evidence that they participated in a Section 8 housing assistance program and received $179 toward their rent, beginning in September 2005. The out-of-pocket cost for rent was $280 per month, and FEMA reimbursed the Bradleys for two months of rent payments. The Bradleys also received $2,000, which FEMA provided to Katrina victims. The Bradleys next moved to Columbus, Georgia, where they signed a 12-month lease on an apartment, with monthly rent of $600. In June 2007 the Bradleys returned to New Orleans.

The district court *sua sponte* granted summary judgment in favor of the Bradleys for ALE incurred while living in Columbus, awarding them $7,200. The district court concluded that Allstate did not act in bad faith in failing to pay ALE because the Bradleys did not present evidence of ALE in a timely manner.

The Bradleys assert that there exist genuine issues of material fact regarding unpaid ALE. They argue that leases provided to Allstate for the period that they lived outside of New Orleans are sufficient to establish a genuine issue regarding uncompensated expenses, and any payments that they received from Section 8 and FEMA should not be credited to Allstate. Allstate argues that, by

27

No. 09-30035

definition, the Bradleys' living expenses did not increase during a time period in which they incurred no expenses because they received payments from other sources, such as FEMA.

The Bradleys have not presented evidence establishing a genuine issue of material fact regarding further uncompensated ALE; no estimate has been provided regarding uncompensated losses. Because the Bradleys have not established any plausible breach of contract for unpaid ALE, there is no basis for asserting a bad faith claim against Allstate with respect to unpaid ALE. The district court did not err in granting summary judgment on both the breach of contract claim and the related bad faith claim for ALE.

## IV. CONCLUSION

The district court erred by ignoring the section 5(e) total loss provision of the homeowners policy, instead prematurely relying on the section 5(b) ACV provision. In order to determine whether section 5(e) controls here, on remand the court must evaluate whether a "covered loss" predominantly caused the damage to the Bradleys' property. The district court also erred by utilizing an incorrect method of calculating ACV, rather than using replacement cost minus depreciation as required by Louisiana law. Its holding that the double recovery rule precluded further recovery by the Bradleys, based on an incorrect method of calculating ACV, must therefore be vacated. Additionally, because the district court granted summary judgment on the §§ 22:658 and 22:1220 claims based upon its determination that the Bradleys could not show an underlying breach of contract, we vacate the grant of summary judgment on the §§ 22:658 and 22:1220 claims. With respect to loss of contents of the home, the Bradleys' interrogatory response and absence of Rule 56(c) evidence demonstrates that, for purposes of summary judgment, they failed to meet their threshold burden of

28

proof regarding the loss of contents; the district court did not err in concluding that there was no genuine issue of material fact regarding uncompensated loss of contents. Lastly, the district court properly granted summary judgment on the Bradleys' ALE claim because they advanced no summary judgment evidence creating a genuine issue of material fact regarding uncompensated ALE.

For the reasons discussed above, the district court's grant of summary judgment is VACATED and REMANDED for consideration consistent with this opinion as to the breach of contract and related bad faith claims for uncompensated structural damage to the Bradleys' home. The summary judgment is AFFIRMED with respect to the claim for loss of contents and ALE and the associated claims of bad faith.