# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2019

Lyle W. Cayce
Clerk

No. 18-30801

BP EXPLORATION & PRODUCTION, INCORPORATED; BP AMERICA PRODUCTION COMPANY; BP, P.L.C.,

Requesting Parties - Appellees

v.

CLAIMANT ID 100315902,
Objecting Party - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-5083

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

This is another appeal from the Deepwater Horizon settlement program. Instead of the appeal we usually see challenging the district court's refusal to exercise its discretion to review a claim, this time the appellant contends that the district court abused its discretion because it reviewed a claim. The principal objection is that the district court rejected the claim on a ground that BP did not raise when seeking review. Because the district court did not abuse

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30801

its discretion in ensuring that the settlement agreement was followed, we AFFIRM.

## I.

## A.

The facts of the Deepwater Horizon explosion, and the flurry of lawsuits that followed, are well known to this court. *See In re Deepwater Horizon*, 732 F.3d 326, 329–330 (5th Cir. 2013). After the lawsuits were consolidated in New Orleans federal court, that court approved the parties' Economic and Property Damages Settlement Agreement. *In re Oil Spill by Oil Rig "Deepwater Horizon"*, 910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014). Qualified persons and entities can file claims in the court-supervised settlement program. The claims are then reviewed by a court-appointed claims administrator.

The claimant in this case, McWhorter & Company, is located in the furthest zone from the spill, Zone D. It thus must show causation by satisfying one of the six tests set forth in Exhibit 4B of the Settlement Agreement. *Claimant ID 100051301 v. BP Expl. & Prod., Inc.*, 694 F. App'x 236, 237 (5th Cir. 2017).

Claimant chose the "decline-only" causation test. The test requires three showings. First, the claimant must show its revenue declined by at least 15% in a three-month period following the spill when compared to that same period before the spill. Second, and central to the district court's decision, the claimant must provide "[s]pecific documentation" showing that one of six listed factors outside the claimant's control prevented its revenue from increasing again after the spill. For example, the claimant could show the entry of a new competitor, nearby road closures, or bankruptcy of a significant customer. The idea is that such an event explains why revenues did not recover in 2011, which would otherwise be expected if the spill caused the 2010 revenue decline.

No. 18-30801

Third, and central to the Appeal Panel's decision, the business must provide what is known as "customer mix" data. This means the claimant must show a sufficient decline in either the share of its total revenue from non-local customers or the share of its total revenue from customers located near the spill. *See Claimant ID 100128765 v. BP Expl. & Prod., Inc.*, 709 F. App'x 771, 772–73 (5th Cir. 2017) (per curiam).

B.

Claimant is an Alabama-based construction company. Over the course of 20 years before the Deepwater Horizon spill, it built around 200 Lowe's Home Improvement stores. It did not, however, contract directly with Lowe's. Instead, the company's affiliate, McWhorter Properties, contracted with Lowe's and then subcontracted to Claimant. This affiliate oversaw the work, and Claimant invoiced the affiliate for all work it completed. The year following the spill, however, work on Lowe's stores came to a halt when that company stopped construction of most new stores nationwide. As a result, Lowe's cancelled two contracts with the affiliate, for which Claimant was to do the work.

Claimant sought roughly $2.9 million from the Settlement Program. The claims administrator denied the claim three times. After the last denial, Claimant appealed the decision to an Appeal Panel. Claimant's brief discussed all three causation requirements but focused on the last one—customer mix data—based on its understanding that it was the reason the administrator had denied the claim. The Panel vacated the denial and remanded the claim. Consistent with Claimant's brief, the Panel discussed only how the claims administrator handled the third showing. On that question about customer mix data, the Panel held that the administrator incorrectly categorized Claimant's invoices based on the location of the Lowe's Stores. Instead, it should have categorized the invoices based on the location of the affiliate,

No. 18-30801

because the affiliate was Claimant's customer.  The Panel thus remanded the case with instructions that the customer mix data be recalculated based on the affiliate's residence, not location of the Lowe's stores.

BP sought district court review.  The court granted review and reversed the Panel decision.  It addressed not customer mix data but whether Claimant satisfied step two.  It held that, because the Appeal Panel found Lowe's was not Claimant's customer, Claimant could not show that one of the six exclusive factors accounted for its continued revenue decrease.  The relevant customer (Claimant's affiliate) may have lost customers in 2011, but that is not a listed factor.  Claimant appealed.

## II.

When a party takes issue with the district court's decision to review a given claim—the thrust of Claimant's appeal—we review only for abuse of discretion.  *In re Deepwater Horizon*, 785 F.3d 1003, 1011 (5th Cir. 2015).  But if we end up reviewing the settlement agreement in answering that question, we follow the normal rule that questions of contract interpretation are considered de novo.  *Id.*

Claimant argues that the district court abused its discretion by considering an argument that BP allegedly failed to raise at any stage of the proceeding: whether Claimant met the second requirement of the causation test.  BP forfeited this argument, Claimant contends, under both traditional forfeiture law and the district court's own rules for discretionary review.  *See In re Goff*, 812 F.2d 931, 933 (5th Cir. 1987) (per curiam); Rules Governing Discretionary Court Review of Appeal Determinations, Rule 30 (Dec. 8, 2015).

## A.

Although BP disputes this, we will assume that BP did not challenge the second required element before the Appeal Panel or in its request for

discretionary review.[1]  But that does not mean it was reversible error for the district court to consider the issue.  Claimant views the forfeiture rules as mandatory ones that prohibit the district court from considering an issue BP did not raise.  That is not the case.  Andrew Spektor & Michael A. Zuckerman, *Ferrets and Truffles and Hounds, Oh My: Getting Beyond Waiver*, 18 GREEN BAG 2d 77, 82 (2014) ("Waiver is a prudential doctrine, which means it does not deprive appellate courts of jurisdiction.").  Although reviewing courts usually do not pass on issues not raised below, they generally retain discretion to do so.  *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  Two of these uncommon situations when a court might look past forfeiture are when "the proper resolution is beyond any doubt" and when "injustice might otherwise result." *Id.* at 121 (citing *Turner v. City of Memphis*, 369 U.S. 350 (1962); quoting *Hormel v. Helvering*, 312 U.S. 552, 557 (1941)); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (explaining that a court "retains the independent power to identify and apply the proper construction of" the law regardless of the "particular legal theories" advanced by the parties); *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 519 n.5 (5th Cir. 2010) (explaining that a court was "not bound to overlook" a misapplication of an insurance policy "only because the parties failed to point" it out).  It was reasonable for the district court to believe that either of those situations was present here.

Courts have also recognized that relaxation of forfeiture rules may be appropriate when an issue not identified by the parties is "antecedent to and ultimately dispositive of the dispute before it."  *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (cleaned up); *cf. City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 214 n.8 (2005)

---

[1] BP's district court filing noted that Claimant had relied on Lowe's being its customer for the second causation inquiry.  Based on this, it argued that "a 'customer' cannot be treated as a customer for one element of the Decline-Only revenue pattern test, and not for another element."

No. 18-30801

(explaining that the court can consider issues that are "inextricably linked" even when not briefed by the parties). That is true for the step two inquiry. That question comes before the analysis of customer mix data. And both are part of the ultimate question whether Claimant can establish causation using the decline-only model. Because the Appeal Panel had to decide that Claimant established all three causation elements before awarding a claim, it must have at least implicitly determined that Claimant had shown a reason why revenue did not recover in 2011.

Aside from the general principles of forfeiture that we have just explained do not help it, Claimant argues that the district court's Rules Governing Discretionary Court Review prevent it from considering claims not raised below. It relies on Rule 30, which reads that the "issues for review by the Court shall be limited to those issues that were properly raised before the Appeal Panel." But even if BP did not raise the second requirement before the Appeal Panel, Claimant did. Two pages of its submission to the Appeal Panel discussed its explanations for "Failure of Recovery in 2011." As already mentioned, the Appeal Panel must have considered this issue to vacate the claim denial. Plus, other rules emphasize the district court's broad authority to review claims decisions if it chooses to do so. Rule 3 states that the district court has "inherent jurisdiction over the settlement as a whole" and a "discretionary right to review any determination of the Appeal Panel." At bottom, the district court has authority to ensure that the settlement it administers is being properly applied. It cannot be an abuse of discretion to try and fulfill that goal.

B.

So the question becomes whether the district court was correct that Claimant did not make the second required showing for causation. On this question, Claimant does not put up much of a fight. Zone D claimants using

6

No. 18-30801

the decline-only test must identify "factors outside the control of the claimant that prevented the recovery of revenues in 2011." *See Claimant ID 100128765 v. BP Expl. & Prod., Inc.*, 709 F. App'x 771, 774 (5th Cir. 2017) (per curiam). There are only six such factors.[2] *Id.* Claimant points to Lowe's decision to halt construction of new stores. But the Appeal Panel found that Lowe's was not the customer, Claimant's affiliate was. And loss of a customer's customer is not one of the six listed factors (it is not apparent how even loss of a direct customer satisfies the criteria). While the new customer designation may have helped Claimant meet one of the three requirements, it is fatal to the claim in this other respect.

* * *

The judgment of the district court is AFFIRMED.

---

[2] The six factors are: (1) The entry of a competitor in 2011; (2) Bankruptcy of a significant customer in 2011; (3) Nearby road closures affecting the business; (4) Unanticipated interruption resulting in closure of the business; (5) Produce or source replacement by a customer; or (6) Loss of financing and/or reasonable terms of renewal.