# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 4, 2011

No. 09-30209

Lyle W. Cayce
Clerk

KATHRYN FRENCH; MALCOLM H. SUTTER,

Plaintiffs - Appellants - Cross-Appellees

v.

ALLSTATE INDEMNITY COMPANY,

Defendant - Appellee - Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before STEWART, PRADO, and ELROD, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Homeowners Kathryn French and Malcolm Sutter (collectively, "the Plaintiffs") sued Allstate Indemnity Company ("Allstate") to recover additional insurance payments for damage to their home resulting from Hurricane Katrina. The Plaintiffs also sought statutory penalties and costs under Louisiana law. After a bench trial, the district court awarded the Plaintiffs additional insurance payments as well as statutory penalties. The Plaintiffs appeal, asserting that the district court improperly excluded their witness and that it should have awarded additional penalties against Allstate. They also contend that the

No. 09-30209

district court misconstrued provisions in their homeowners policy and consequently awarded too little. Allstate cross-appeals the judgment, arguing that the Plaintiffs were awarded too much. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

### A. Factual Background

The Plaintiffs built their lakefront home in Slidell, Louisiana in 2003 and insured it under a homeowners policy from Allstate. They also insured their property against flood damage with a policy from Allstate Insurance Company in its capacity as a flood insurance carrier. On August 29, 2005, Hurricane Katrina hit southern Louisiana and caused considerable damage to the Plaintiffs' property. The Plaintiffs sought recovery for wind damage under their homeowners policy and for flood damage under their flood insurance policy. After several disputes over the amounts owed, this lawsuit followed. Before trial, the Plaintiffs settled their flood claims and the flood insurer was dismissed from this suit, leaving only the wind-damage claims to be tried.

The Plaintiffs' homeowners policy with Allstate has been in effect at all relevant times in this litigation. The policy covers losses to the Plaintiffs' dwelling (or home),[1] adjoining structures, and personal property (otherwise known as contents), up to the following amounts:

> Coverage A: Dwelling       Liability limit: $338,000
> Coverage B: Other Structures    Liability limit: $ 33,800
> Coverage C: Contents       Liability limit: $253,500

---

[1] The Plaintiffs' policy defines "dwelling" as "a one, two, three or four family building structure . . . where you reside and which is principally used as a private residence." We use the words "dwelling" and "home" interchangeably in this opinion.

2

No. 09-30209

Additional Living Expense[2]          Up to 12 months

The Plaintiffs also purchased from Allstate an endorsement called the "Building Structure Reimbursement Extended Limits Endorsement." Where applicable, the Extended Limits Endorsement provides greater dwelling protection by increasing the coverage limit of the insured's dwelling by 20 percent.

Allstate incrementally paid the Plaintiffs' wind-damage claim and by the start of trial had paid the following amounts under the policy:

| | |
|---|---|
| Coverage A: Dwelling | Paid: $215,292.88[3] |
| Coverage B: Other Structures | Paid: $        0 |
| Coverage C: Contents | Paid: $  91,926.37 |
| Additional Living Expense[4] | Paid: $    2,100.00 |

Additionally, as part of the settlement on their flood claims, the Plaintiffs received $171,708 from their flood insurer for damage to their dwelling.

On August 28, 2006, the Plaintiffs filed suit against Allstate in state court, seeking additional payments on their wind-damage claim, statutory penalties and damages, and costs. Allstate removed the case to the district court on the basis of diversity jurisdiction.

---

[2] Additional Living Expense (ALE) coverage permits recovery for additional expenses under specified conditions; that provision is discussed in more detail below.

[3] Allstate made payments to the Plaintiffs on their dwelling claim as follows:

| | |
|---|---|
| Nov. 4, 2005: | $10,000 |
| Dec. 1, 2005: | $70,461.82 |
| Feb. 13, 2006: | $10,767.96 |
| Sept. 13, 2007: | $63,021.78 |
| Aug. 15, 2008: | $61,041.32 |

[4] Allstate paid the Plaintiffs a $2,100 advance for ALE on September 26, 2005.

No. 09-30209

## B.    District Court Proceedings

After a three-day bench trial in February 2009, the district court found that the Plaintiffs were entitled to an additional $123,000 on their claim of wind damage to their dwelling and $10,000 on their claim of damage to "other structures." It determined that the Plaintiffs' repair costs would exceed their policy limit and that they were thus entitled to at least the full limit on their dwelling. The district court also concluded that the Plaintiffs were not entitled to additional living expenses under the policy; nor could they benefit from the Extended Limits Endorsement, as the Endorsement did not apply to their claim. Next, the district court found that Allstate was subject to penalties under Louisiana Revised Statute § 22:658[5] because Allstate had failed to timely pay an undisputed portion of the Plaintiffs' claim. Concluding that the older, 2003 version of § 22:658 applied, the district court calculated penalties as 25 percent of the total amount it found was due, or 25% of $348,000. The district court denied the Plaintiffs' claim for general and specific damages under Louisiana Revised Statute § 22:1220.[6] Finally, the district court rejected the Plaintiffs' argument that they were entitled to § 22:658 penalties on their contents claim. The district court entered final judgment on February 13, 2009.

Allstate timely moved to modify the judgment under Federal Rule of Civil Procedure 52(b). It argued that the Plaintiffs had not proven by a preponderance of the evidence that they were entitled to receive the additional $123,000 for wind damage to their dwelling. Allstate also asserted that with the

---

[5] LA. REV. STAT. § 22:658 was redesignated § 22:1892 in 2009. We use the prior section number in this opinion.

[6] LA. REV. STAT. § 22:1220 was redesignated § 22:1973 in 2009. We use the prior section number in this opinion.

4

No. 09-30209

award, the Plaintiffs' total insurance compensation for their home exceeded the value of the home, a result prohibited under Louisiana's bar against "double recovery." Finally, Allstate argued that the district court erred as a matter of law in concluding that § 22:658 penalties were calculated as 25 percent of the Plaintiffs' total property claim, as opposed to 25 percent of just the amount untimely paid. The district court denied Allstate's motion. It concluded that there was sufficient evidence to find that additional payments were due to the Plaintiffs and that, with respect to the § 22:658 penalties, this court's decision in *Grilletta v. Lexington Insurance Co.*, 558 F.3d 359 (5th Cir. 2009), foreclosed Allstate's argument.

On appeal, the Plaintiffs make six arguments: (1) the district court abused its discretion by excluding the report and testimony of their expert, Salvant; (2) they are entitled to benefit from the Extended Limits Endorsement in their policy; (3) they are entitled to payments under the Additional Living Expenses provision; (4) the district court incorrectly concluded that the Plaintiffs were not entitled to § 22:1220 damages; (5) the district court mistakenly applied the 2003 version of § 22:658 and not the amended, 2006 version; and (6) the district court incorrectly concluded that Allstate owed no statutory penalties on the Plaintiffs' contents claim. On cross-appeal, Allstate renews the two arguments from its Rule 52(b) motion: (1) the record contains insufficient evidence to support the district court's award of additional payments to the Plaintiffs for wind damage to their home; and (2) § 22:658 penalties are due only on the undisputed amount a court finds due to an insured, not on the total amount it finds due.

No. 09-30209

## II.  APPLICABLE LAW AND STANDARD OF REVIEW

We apply Louisiana law in this diversity case.  *See Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) ("When, as here, jurisdiction is based on diversity, we apply the forum state's substantive law.").  The Plaintiffs' homeowners policy also specifies that if a covered loss occurs within Louisiana, "the laws of Louisiana shall govern any and all claims or disputes in any way related to this policy."

In Louisiana, an insurance policy "constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." *Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 516–17 (5th Cir. 2010) (quoting *Peterson v. Schimek*, 729 So. 2d 1024, 1028 (La. 1999)); *see also* LA. CIV. CODE art. 1983 ("Contracts have the effect of law for the parties . . . .").  When an insurance policy is subject to interpretation, "[w]ords and phrases . . . are to be construed using their plain, ordinary and generally prevailing meaning," unless the words have acquired a technical definition.  *Bradley*, 620 F.3d at 517.  The policy as a whole must "be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy." LA. REV. STAT. § 22:881.

When a district court's final judgment following a bench trial is appealed, we review the district court's findings of fact for clear error, and conclusions of law and mixed questions of law and fact de novo.  *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290, 294 (5th Cir. 2009).  "A finding is clearly erroneous if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the

6

No. 09-30209

preponderance of credible testimony." *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009). We will reverse under the clearly erroneous standard "only if we have a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000). Moreover, "[t]he burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision," as we must give due regard to the district court's credibility evaluations. *Id.* A district court's interpretation of an insurance contract or provision is a question of law that we review de novo. *Consol. Co. v. Lexington Ins. Co.*, 616 F.3d 422, 425 (5th Cir. 2010).

## III.  DISCUSSION

We first consider the Plaintiffs' claim that the district court improperly excluded evidence, and then discuss Allstate's challenge to the district court's award of additional payments on the Plaintiffs' dwelling claim. We next consider whether the Plaintiffs are entitled to additional payments under their homeowners policy. After a brief examination of the damages provision in Louisiana Revised Statute § 22:1220, we end with an analysis of the penalty provisions in Louisiana Revised Statute § 22:658.

### A.    Exclusion Of Evidence

The Plaintiffs initially sought to have two experts testify at trial on their behalf: Paul LaGrange and James Salvant. Both experts were to testify about the damages to the Plaintiffs' home and offer opinions on the costs of repair. At a pretrial conference, however, the district court instructed the Plaintiffs that only one of the two experts could testify. The Plaintiffs objected but chose LaGrange. At trial, the Plaintiffs attempted to call Salvant as an expert witness

7

No. 09-30209

but the district court denied their request.  It stated that the Plaintiffs "[did not] have a right to call two experts for the same thing."   The Plaintiffs then submitted Salvant's deposition testimony as a proffer.  The Plaintiffs also sought to admit a report Salvant had prepared regarding wind damage to the Plaintiffs' home, but Allstate objected to the admission of the report as hearsay.  The district court sustained the objection.

On appeal, the Plaintiffs assert that the district court erred by excluding Salvant's testimony and report.  We review the district court's determination of the admissibility of expert evidence for abuse of discretion.  *Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010).  A district court's exclusion of an expert is an abuse of discretion when its determination is based on a clearly erroneous assessment of the evidence or an erroneous view of the law.  *Id.*  We review de novo the district court's legal conclusion that Salvant's report was hearsay.

### 1.   *Salvant's testimony*

The district court's decision to exclude Salvant's testimony implicates Federal Rules of Evidence 702 and 403.  Under Rule 702, a qualified expert may testify on matters requiring "specialized knowledge" if such knowledge will help the factfinder understand the evidence or determine a fact in issue, subject to certain conditions.  FED. R. EVID. 702.  Whether an expert will assist the factfinder is a question the trial court has "wide discretion" to decide.  *Mercado v. Austin Police Dep't*, 754 F.2d 1266, 1269 (5th Cir. 1985).  This is true "particularly when the court sits as trier of fact, for [it] is then in the best position to know whether expert testimony would help [it] understand the case." *Id.*  Under Rule 403, evidence, though relevant, may be excluded if its probative value is substantially outweighed "by considerations of . . . needless presentation

8

of cumulative evidence." FED. R. EVID. 403. A district court "has broad discretion to weigh the relevance, probative value, and prejudice of the evidence in determining its admissibility under Rule 403." *United States v. Allard*, 464 F.3d 529, 534 (5th Cir. 2006).

We conclude on this record that the district court was well within its discretion to exclude Salvant's testimony at trial. LaGrange testified on the scope and cost of damage to the Plaintiffs' home, and the district court concluded that Salvant's testimony on the same subject would be unhelpful and needlessly cumulative. The Plaintiffs contend that Salvant's testimony would have helped the district court determine whether the Plaintiffs were entitled to the full extended limits in the Extended Limits Endorsement, and whether the 2006 version of Louisiana Revised Statute § 22:658 applied to the Plaintiffs' claim. But the district court resolved these issues as a matter of law or on the basis of facts that were undisputed by the parties. Salvant's testimony regarding the extent of the damage would have been irrelevant to its analysis. We thus cannot say that the district court's determination was clearly erroneous.

### 2. *Salvant's wind-damage report*

The Plaintiffs claim that Salvant's April 2008 report of the wind damage to their home was improperly excluded as a trial exhibit. In the district court, the Plaintiffs responded to Allstate's objection that the report was hearsay by arguing that the report was admissible under the hearsay exception for records of regularly conducted activity. On appeal, however, the Plaintiffs present no argument explaining why the district court erred in excluding Salvant's report as hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of

No. 09-30209

the matter asserted." FED. R. EVID. 801(d).  The Plaintiffs do not assert, nor do we find a basis in the record for concluding, that Salvant's report was non-hearsay or fell within a hearsay exception.  We thus affirm.

**B.    Award Under Homeowners Policy**

The Plaintiffs and Allstate together raise three claims of error related to the district court's award of $123,000 for wind damage to the Plaintiffs' home. First, Allstate contends that there is insufficient evidence in the record to support a finding that the Plaintiffs were due additional payment on their dwelling claim.  Allstate also argues that the award permits the Plaintiffs to recover more in insurance proceeds than the value of their home, resulting in an impermissible windfall to the Plaintiffs.  Second, the Plaintiffs assert that the district court erred as a matter of law in failing to apply the Extended Limits Endorsement in the policy to the Plaintiffs' claim, which would have increased the liability limit on the claim (and thus, they argue, the amount of the award). Third, the Plaintiffs argue that the district court erred in failing to award payment under the Additional Living Expenses provision of the policy.

With respect to Allstate's claim, we review the district court's factual finding that the Plaintiffs were entitled to additional insurance proceeds for clear error.  The Plaintiffs' two claims present questions of law, and we therefore review them de novo.  *See Dickerson*, 556 F.3d at 294.

**1.    *Actual Cash Value provision***

We consider at the threshold how Allstate agrees to pay for a covered loss under the terms of its homeowners policy.  The relevant contract terms appear in a section titled "How We Pay For A Loss," which specifies that Allstate will pay on an actual cash value ("ACV") basis in the following circumstances:

10

No. 09-30209

> **Actual Cash Value**. *If you do not repair or replace the damaged . . . property, payment will be on an actual cash value basis.* This means there may be a deduction for depreciation. *Payment will not exceed the limit of liability* shown on the Policy Declarations for the coverage that applies to the damaged . . . property, regardless of the number of items involved in the loss.
>
> You may make claim for additional payment as described in paragraph "c" [Building Structure Reimbursement][7] . . . *if you repair or replace the damaged . . . covered property* within 180 days of the actual cash value payment.

(emphasis added).

We have previously scrutinized this ACV provision from Allstate's homeowners policy. *See Bayle*, 615 F.3d 350 (5th Cir. 2010); *Nunez*, 604 F.3d 840 (5th Cir. 2010); *Bradley*, 620 F.3d 509 (5th Cir. 2010). We have concluded in our prior cases that under this provision, insured homeowners "are not entitled to any payments for structural damage in excess of the ACV of their house" unless they repair or replace their damaged property. *Bayle*, 615 F.3d at 362.[8] The provision also makes clear that where the insured has not repaired or replaced the damaged property, she may not recover an amount greater than the policy limit for the dwelling. If the insured subsequently repairs or replaces the covered property, she may claim the additional expenses incurred, subject to the 180-days limit.

---

[7] The Building Structure Reimbursement provision is discussed in more detail below.

[8] *Accord Nunez*, 604 F.3d at 846; *Bradley*, 620 F.3d at 525. ACV is computed "as the cost of replacing the building as it existed at the time of the accident, taking into account the replacement costs within a reasonable time after the accident, minus depreciation." *Bradley*, 620 F.3d at 520.

11

No. 09-30209

In this case, it is undisputed that the Plaintiffs have not repaired or replaced their damaged property. Allstate's liability under the homeowners policy is thus subject to the ACV provision, as the district court noted in its oral ruling at the close of trial.

With this principle in mind, we turn to the parties' challenges to the district court's award of additional insurance proceeds.

### 2.   *$123,000 award on Plaintiffs' dwelling claim*

At the close of trial, the district court judge concluded that the cost of repairs to the Plaintiffs' dwelling would exceed or at least equal the dwelling limit of $338,000 on their homeowners policy. He thus awarded the difference between the amount Allstate had already paid the Plaintiffs on their dwelling claim—roughly $215,000—and the dwelling limit of $338,000, an amount equal to $123,000.

Several findings persuaded the district judge that the Plaintiffs were entitled to their policy limit on the dwelling. First, he determined that the Plaintiffs had introduced sufficient evidence at trial to demonstrate that the cost to repair the extensive damage to their home would exceed the dwelling limit. LaGrange, for instance, had testified that the total wind damage to the Plaintiffs' home equaled $452,378.99, well above the dwelling limit. The judge noted in his oral ruling that he was not convinced this estimate was "all justifiable"; for one, LaGrange appeared to have "based that [estimate] on replacement cost" and not ACV. But the judge found the Plaintiffs' overall evidence on this factual question persuasive. Second, the judge found that Allstate's estimates had consistently "lowballed" the amount of the Plaintiffs'

12

damages.   Finally, the judge noted that prior to trial, he had visited the Plaintiffs' home and observed firsthand its damaged condition.

At trial, the Plaintiffs and Allstate provided damage estimates that were, in the district court's words, "all over the board," and thus the question of the cost of wind damage to the Plaintiffs' home turned essentially on witness credibility.   "The district court, as the finder of fact in a bench trial, is best positioned to evaluate the credibility of the witnesses." *Dickerson*, 556 F.3d at 295.   We are not persuaded that the district court's findings are against the preponderance of credible testimony, as Allstate urges us to hold.   On this record, a reasonable factfinder could conclude that the Plaintiffs offered the more credible account of the ACV of the wind damage to their home.

Allstate also argues that the $123,000 award to the Plaintiffs constitutes an impermissible windfall because it permits the Plaintiffs "to recover more in insurance proceeds than the value of the home."   In Louisiana, "an insured may not recover in excess of his actual loss," although he "may recover under each policy providing coverage until the total loss sustained is indemnified." *Wegener v. Lafayette Ins. Co.*, — So. 3d —, 2011 WL 880339, at \*13 (La. Mar. 15, 2011) (quoting *Cole v. Celotex*, 599 So. 2d 1058, 1080 (La. 1992)); *see also Bradley*, 620 F.3d at 521 ("An insured party in Louisiana may generally 'recover under all available coverages provided that there is no double recovery.'" (quoting *Cole*, 599 So. 2d at 1080)).   Where the insured has not repaired, rebuilt, or replaced his damaged property, "the appropriate measure of the [insured's] actual loss is the ACV of the property." *Bradley*, 620 F.3d at 522.

As the district court noted in its oral ruling, by the start of trial Allstate had paid the Plaintiffs $215,292.88 for wind damage to the dwelling, and the

No. 09-30209

flood insurer had paid $171,708 for flood damage to the dwelling. The Plaintiffs had thus recovered a total of $387,000.88 in insurance proceeds for Katrina-related damage to their home. With the district court's award of $123,000, the Plaintiffs' total recovery for their home climbed to $510,000.88. Allstate argues that $510,000.88 exceeds the Plaintiffs' actual loss to their home, and therefore the award gives them a double recovery.

We note that Allstate raised this very argument in the district court both before trial, in its proposed findings of fact, and after trial, in its Rule 52(b) motion. Both times the argument was rejected: the district court declined to adopt Allstate's position at the close of trial; and, in denying Allstate's Rule 52(b) motion, the district court implicitly reaffirmed that the Plaintiffs' pre-trial recovery fell short of indemnifying them for their loss—sufficiently so that the additional award for wind damage did not constitute a double recovery. We cannot say that this finding was clearly erroneous. The calculation of the Plaintiffs' actual loss—the ACV of the damaged property—is a question that must be determined by the factfinder. *See Bradley*, 620 F.3d at 522 ("The fact-finder must determine, or the parties may stipulate, the ACV of the property."). We reiterate that the district court was best positioned to make credibility determinations of the witnesses to ascertain the Plaintiffs' actual loss. Moreover, there was sufficient evidence at trial—as Allstate itself points out—that the ACV of the Plaintiffs' dwelling, and the Plaintiffs' corresponding actual loss, exceeded $510,000.88.[9]

---

[9] The parties submitted as a joint exhibit at trial the flood damage worksheet of Allstate's adjuster Darrel Favel, in which he assessed the ACV of the Plaintiffs' dwelling at $571,975.81. Similarly, the parties submitted a 2003 appraisal of the Plaintiffs' home as another joint exhibit, and that appraisal lists the home's replacement value at $533,925.

14

No. 09-30209

We thus hold that there is a preponderance of evidence in the record sufficient to support the district court's award and its finding that the award does not constitute an impermissible double recovery. Finding no clear error, we affirm.

### 3. *Application of Extended Limits Endorsement*

The Plaintiffs contend that the district court erred in concluding that they may not benefit from the Extended Limits Endorsement. The Endorsement is available to an insured for an additional premium, and, where applicable, modifies the provision of the paragraph titled "How We Pay For A Loss" that states:

> **Building Structure Reimbursement.** Under Coverage A–Dwelling Protection and Coverage B–Other Structures Protection, we will make additional payment to reimburse you for cost in excess of actual cash value *if you repair, rebuild or replace damaged, destroyed or stolen covered property* within 180 days of the actual cash value payment.
>  . . .
> Building Structure Reimbursement will not exceed the smallest of the following amounts:
>
> a)     the replacement cost . . . ;
> b)     the amount actually and necessarily spent to repair or replace the damaged building structure(s) . . . ; or

---

Sutter testified at trial that this figure likely underestimated the replacement value of the dwelling.

　　Allstate contends that to arrive at the Plaintiffs' actual loss, we must subtract from these figures the cost of the "indisputedly undamaged" portion of the dwelling. Cobbling together various portions from Sutter's testimony, Allstate asserts that the undamaged portion of the Plaintiffs' dwelling has a value of $225,000, the amount we should subtract. While Allstate's contention is plausible, the district court was best positioned to assess the credibility of the witnesses to ascertain the Plaintiffs' actual loss, and it determined that the Plaintiffs had shown by a preponderance of the evidence their entitlement to additional recovery on their dwelling. On this record, we find no clear error in the district court's determination.

15

No. 09-30209

> c)   the limit of liability applicable to the building
> structure(s) as shown on the Policy Declarations
>       . . . .
> Building Structure Reimbursement payment will be limited
> to the difference between any actual cash value  payment
> made for the covered loss to building structures and the
> smallest of 1), 2) or 3) above.

(emphasis added).  The Endorsement, where applicable, substitutes the following

language into (3):

> 3)   *120% of* the limit of liability applicable to the building
> structure(s) as shown on the Policy Declarations . . . .

(emphasis added).  All other policy terms and conditions remain the same.

The district court rejected the Plaintiffs' argument that the Extended

Limits Endorsement applied to their wind-damage claim.  To prevail on their

argument, the district court concluded, the Plaintiffs, at the threshold, had to

show that they had repaired or replaced their damaged property, and it was

undisputed at trial that the Plaintiffs had not made any permanent repairs to

their dwelling.   The district court concluded that the Extended Limits

Endorsement did not apply for an additional reason: it concluded as a factual

matter that the Plaintiffs had not insured their property to a hundred percent

of its replacement cost, as required under the Endorsement.[10]

---

[10] In making this factual determination, the district court relied on the following
language in the Extended Limits Endorsement:

> This endorsement applies only if:
> 1)   You insure your dwelling, attached structures and detached
>      building structures to 100% replacement cost as determined by:
>      a)   an Allstate Home Replacement Cost Estimator completed
>           and based on the accuracy of information you furnished;
>           or
>      b)   our inspection of your residence premises.

16

No. 09-30209

We agree with the district court's legal conclusion and therefore do not address its alternative factual determination. As is plainly evident from the text of the Extended Limits Endorsement, it modifies only the Building Structure Reimbursement provision, and therefore an insured may benefit from the Endorsement only if she is entitled to Building Structure Reimbursement. The Plaintiffs here are not entitled to any Building Structure Reimbursement for the simple reason that they have not repaired, rebuilt, or replaced the damage to their home. In this way, they are identically situated to the plaintiffs in *Bayle*. The Bayles sought damages under the "building structure reimbursement" provision of their policy with Allstate, but it was "undisputed that the Bayles neither repaired their damaged property nor replaced it on the same lot." 615 F.3d at 361–62. The district court thus "rejected the proposition that any of the Bayles' structural damage should be calculated under the 'building structure reimbursement' provision, maintaining that the Bayles were limited to the ACV of the property." *Id*. at 361. We affirmed in that case, holding that "[t]he district court did not err in concluding that the Bayles are not entitled to any payments for structural damage in excess of the ACV of their house." *Id*. at 362. The same conclusion is inescapable in this case. Because the Plaintiffs are not entitled to payment for Building Structure Reimbursement, the Endorsement does not apply.

In an argument raised for the first time on appeal, the Plaintiffs assert that Allstate's inadequate payments prevented them from starting repairs to their home. They argue that because it was effectively Allstate's fault that they did not repair their home, their failure to repair should be excused under Article

17

No. 09-30209

1772 of the Louisiana Civil Code.  *See* LA. CIV. CODE art. 1772 ("A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.").  We decline to address the substance of the Plaintiffs' contention because it was not made below.  "Under this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate extraordinary circumstances." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009) (internal quotation marks omitted).  The Plaintiffs make no argument or showing of extraordinary circumstances in this case, and we therefore adhere to our general rule.

**4.** *Entitlement to Additional Living Expenses*

The Plaintiffs next contend that they are entitled to payment under the Additional Living Expenses (ALE) provision of their homeowners policy and that the district court erred in denying payment.  The policy's ALE provision, appearing in the subsection titled "Additional Protection," states:

> **Additional Living Expenses**
>
> a)  We will pay the reasonable increase in living expenses necessary to maintain your normal standard of living when a direct physical loss we cover . . . makes your residence premises uninhabitable.
>
>   . . . .
>
>   Payment for additional living expense as a result of a covered loss . . . will be limited to the least of the following:
>
>   1.  the time period required to repair or replace the property we cover, using due diligence and dispatch; or

18

No. 09-30209

> 2.   if you permanently relocate, the shortest time for your household to settle elsewhere;
>
> 3.   12 months.

The Plaintiffs assert that testimony at trial established that they would require approximately $5,000 a month to maintain their standard of living while their home was being repaired.  Assuming that it would take at least 12 months to repair their home, the Plaintiffs requested ALE benefits of $60,000.

The district court concluded that because the Plaintiffs had not introduced evidence of any additional living expenses *actually* incurred, they were not entitled to payments under the ALE provision.  Were the Plaintiffs to later commence repairs that required them to vacate their home, and thereby incur ALE, the district court stated, they could then claim payment under the provision.

On appeal, the Plaintiffs do not dispute that they have not established the predicate requirement of actually incurring ALE.  Indeed, it is undisputed that the Plaintiffs have continuously resided at their house since 2003 and have not commenced any permanent repairs to their home.  Instead, the Plaintiffs again argue that their failure to repair should be excused under Article 1772 of the Louisiana Civil Code.  And again, we decline to address this argument raised for the first time on appeal.  We do note our agreement with the district court that under the homeowners policy, it appears that the Plaintiffs may later claim ALE payment once they have actually incurred those expenses.

**C.   Statutory Damages: § 22:1220**

At trial, the Plaintiffs sought § 22:1220 damages for mental anguish and lost wages.  The district court concluded that the Plaintiffs had not presented

No. 09-30209

sufficient evidence of compensable damages.  We review the court's factual conclusions for clear error.  *Dickerson*, 556 F.3d at 305.

Section 22:1220 imposes on insurers the duties of good faith and fair dealing.  These duties include an obligation to adjust claims fairly and promptly, and are "separate and distinct from the duties mentioned in the contract of insurance." *Dickerson*, 556 F.3d at 303.  Section 22:1220 also specifies that any insurer who breaches these duties "shall be liable for any damages sustained as a result of the breach."  § 22:1220(A).

Where an insured shows that the insurer breached its duty of good faith, she is entitled to general or special damages.[11]  LA. REV. STAT. § 22:1220(C).  To justify an award of damages, the insured must adduce sufficient proof—including causation—of the damages alleged.  *See Consol. Co. v. Lexington Ins. Co.*, 616 F.3d 422, 434 (5th Cir. 2010) ("Damages [under § 22:1220] are awarded to compensate the insured for losses *caused by* the insurer's refusal to pay." (emphasis added)).  Thus, for instance, while general damages for mental anguish may be awarded under § 22:1220, a plaintiff is not entitled to such damages absent a showing of sufficient proof of mental anguish. *See, e.g.*, *Dickerson*, 556 F.3d at 304–05 (stating plaintiff had to submit sufficient evidence "to prove that he suffered compensable mental anguish as a result of [the insurer's] actions").

---

[11] In Louisiana, general damages "are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering . . . or other losses of life or life-style which cannot be definitely measured in monetary terms.'" *Dickerson*, 556 F.3d at 304 (quoting *Bellard v. American Cent. Ins. Co.*, 980 So. 2d 654, 674 (La. 2008)).  Special damages, on the other hand, "are those which have a ready market value, such that the amount of damages theoretically may be determined with relative certainty, including medical expenses and lost wages." *Guillory v. Lee*, 16 So. 3d 1104, 1118 (La. 2009) (internal quotation marks omitted).

No. 09-30209

During Allstate's closing argument, the district court judge commented that it did not believe the Plaintiffs had sufficiently demonstrated compensable mental anguish damages:

> [ALLSTATE'S ATTORNEY]:  Judge, there is nothing that triggered 1220 here.  I don't even think there is much talk about it, and there is no proof, really, of damages under—actual damages under 1220.  There has been some mention of mental anguish and emotional distress, as there always is, but there has been no causation here, proof of causation that any problems that Mr. Sutter and Ms. French supposedly had were caused by Allstate's handling of the wind claim.
>
> THE COURT: If it will save you time, I agree with you on that . . . .

The district court judge reiterated this conclusion in his oral ruling at the close of trial.  He stated:

> I believe that I've already said during oral argument but I'll repeat here that I don't find there is any convincing evidence of substantial 1220 damages here, and since, as counsel are aware, you can't recover penalties under both statutes [§§ 22:658 and 1220] . . . I'm not going to award damages under 1220.

The Plaintiffs contend that this last statement suggests that the district court believed it could not award § 22:1220 damages in light of its award of § 22:658 penalties, and on that erroneous belief declined to award § 22:1220 damages. The Plaintiffs are correct that a court may award both § 22:1220 damages and § 22:658 penalties. *See Consol. Co.*, 616 F.3d at 434 ("[S]tatutory damages under Section 22:1220(A) may be awarded concurrent with statutory penalties under

21

Section 22:658(B)(1)." (emphasis omitted)).[12]  The record here shows, however, as evidenced by the district court's comment during Allstate's closing argument, that the district court denied the Plaintiffs' request for § 22:1220 damages on the merits of that claim.

Based on our review of the record, we cannot say that the district court clearly erred in concluding that the Plaintiffs had not met their burden of proving general and specific damages.  While both plaintiffs testified that they had experienced emotional and physical stress since Katrina, they presented little evidence that Allstate's adjustment of their claim was the cause of their stress.  Likewise, Sutter, who testified that he has been unemployed since Katrina, stated at trial that his job loss was directly attributable to Katrina's physical destruction in New Orleans.  We therefore conclude that the district court did not clearly err in denying § 22:1220 damages to the Plaintiffs.

## D.    Statutory Penalties: § 22:658

Section 22:658 pertains to the payment and adjustment of insurance claims.  Where applicable, § 22:658(A)(1) requires insurers to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured."  An insurer's failure to pay "within thirty days after receipt of such satisfactory written proofs and demand therefor . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty." § 22:658(B)(1). The Louisiana Supreme Court has held that an insurer who fails to pay an undisputed amount within the

---

[12] In contrast, a plaintiff "may be awarded *penalties* under only one of the two provisions, §§ 22:1220 and 22:658, whichever amount is greater." *Dickerson*, 556 F.3d at 297 (emphasis added) (citing *Calogero v. Safeway Ins. Co.*, 753 So. 2d 170, 174 (La. 2000)).

No. 09-30209

statutory time limit is, "by definition, arbitrary, capricious or without probable cause." *La. Bag Co. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1116 (La. 2008).

Though it disputed liability below, on appeal Allstate does not disagree that it is liable for § 22:658 penalties because it failed, in 2005, to timely pay the undisputed portion of the Plaintiffs' wind-damage claim. After the Plaintiffs filed their wind-damage claim, Allstate hired adjuster Darrel Favel to investigate the claim. Favel inspected the Plaintiffs' home in late September 2005 and completed his estimate report on October 25 or 26, 2005. In his report, Favel recommended that Allstate pay $80,461.82 under the Plaintiffs' dwelling coverage.[13] Allstate did not dispute that it owed at least this amount on the Plaintiffs' dwelling claim. But it delayed prompt payment and split the amount owed into two checks. On November 4, 2005, Allstate paid a $10,000 advance to the Plaintiffs. On December 1, 2005, the Plaintiffs received a check for the balance due, $70,461.82. The district court determined that Allstate had received satisfactory proof of the Plaintiffs' dwelling claim by late October 2005, when it received Favel's report. Although the $10,000 was timely paid, Allstate's second check for $70,461.82 was more than thirty days after Favel's report. The district court thus concluded that Allstate was liable for § 22:658 penalties.

Agreeing with the district court's finding of liability, the parties on appeal dispute the district court's assessment of penalties under § 22:658. The Plaintiffs contend that the district court should have applied the 2006 version of the statute—which subjects the insurer to greater penalties—and not the 2003 version. Allstate argues that although the district court was correct to apply the 2003 version of the statute, the court incorrectly calculated the penalty due. In

---

[13] Favel also recommended that Allstate pay $3,000 on the Plaintiffs' contents claim.

No. 09-30209

making this argument, Allstate concedes that the district court expressly relied on our decision in *Grilletta v. Lexington Insurance Co.*, 558 F.3d 359 (5th Cir. 2009), where we discussed the proper way to calculate § 22:658 penalties. Allstate urges us, however, to conclude that to the extent *Grilletta* misconstrued Louisiana law, it was wrongly decided. We apply de novo review to the district court's legal conclusions regarding the assessment of § 22:658 penalties. *Grilletta*, 558 F.3d at 368. Finally, the Plaintiffs argue that they are entitled to penalties on their contents claim and that the district court's failure to award such penalties was error. We review for clear error the district court's factual determinations on the Plaintiffs' contents claim.

### 1.     *2003 statute, 2006 amendment*

At the time of Katrina, the Louisiana legislature had last amended § 22:658 in 2003. That version subjected the insurer, when liable, to a penalty of 25 percent damages on the amount found to be due, or in the event the insurer had made a partial payment, 25 percent of the difference between the amount paid and the amount found to be due. Post-Katrina, the Louisiana legislature amended the statute to double the recoverable penalties from 25 to 50 percent of the "amount found to be due," and to provide reasonable attorney fees and costs. *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 197 (La. 2008). That amendment took effect on August 15, 2006, and is not retroactive. *Id.* at 201. In *Sher*, the Louisiana Supreme Court explained that whether the 2003 or 2006 version of the statute applies to an insured's claim depends on when the claim first arose. For instance, if a claim for § 22:658 penalties first arose *prior* to the effective date of the amendment, then the 2003 version applied. *Id.* at 199. A claim under § 22:658 exists when "(1) an insurer has received satisfactory proof

24

of loss, (2) the insurer fails to tender payment within thirty days of receipt thereof, and (3) the insurer's failure to pay is arbitrary, capricious or without probable cause." *La. Bag Co.*, 999 So. 2d at 1112–13.

The Plaintiffs argued in the district court that the 2006 version of the statute applied because their claim for penalties arose after the amendment's effective date. The district court disagreed, concluding that the Plaintiffs' claim for penalties first arose *prior* to the amendment's effective date. We agree with the district court.

The record here sufficiently supports the district court's finding that the Plaintiffs' claim for § 22:658 penalties first arose in late 2005. The district court determined that Allstate had received satisfactory written proof of the Plaintiffs' wind-damage claim by late October 2005, when Allstate's adjuster Favel completed his estimate. We do not find this determination clearly erroneous. A "satisfactory proof of loss" under § 22:658 "is only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co.*, 999 So. 2d at 1119 (internal quotation marks omitted). "[P]roof of loss is a flexible requirement to advise an insurer of the facts of the claim," and "it need not be in any formal style." *Id.* (internal quotation marks omitted). Favel's report was based on his inspection of the damage to the Plaintiffs' dwelling, and it sufficiently informed Allstate of the Plaintiffs' wind-damage claim. His report recommended that the Plaintiffs receive $83,461.82 on their wind-damage claim. Allstate agreed that the Plaintiffs were entitled to that amount, but did not tender full payment within thirty days of Favel's report. Allstate's failure to pay the full undisputed amount within the statutory time limit was, "by definition, arbitrary, capricious or without probable cause." *Id.* at 1116. Accordingly, the

Plaintiffs' claim for § 22:658 penalties on their wind-damage claim arose by late 2005. *See id.* at 1112–13.

We reject the Plaintiffs' contentions to the contrary. They assert that their § 22:658 claim did not arise until August 28, 2006, when they filed their lawsuit; or, in the alternative, until mid-2007, when Allstate received the report of Plaintiffs' expert LaGrange. In support of the first assertion, the Plaintiffs contend that their complaint was the first satisfactory written proof Allstate received of their wind-damage claim. This contention is plainly incorrect: Favel's earlier report was the first such proof. In support of the second assertion, the Plaintiffs claim that LaGrange's report included estimates for new damage to the Plaintiffs' home, thus giving rise to a new claim for statutory penalties—this one under the amended version of the statute. The district court, concluding that LaGrange's report did not constitute a new "satisfactory proof of loss," rejected this argument. Based on our review of the record, we agree with the district court and cannot say its determination was clearly erroneous.

Because the Plaintiffs' cause of action for § 22:658 penalties arose prior to the amendment of the statute, we conclude that the district court was correct to apply the 2003 version of the statute to the Plaintiffs' claim.

## 2. *Penalty on "amount found to be due"*

We next consider the district court's calculation of penalties under the 2003 version of the statute. At the close of trial, the district court made two key determinations with respect to the ultimate "amount found to be due" from Allstate to the Plaintiffs. The district court concluded first, that the Plaintiffs were entitled to the full policy limit under their dwelling coverage; and second, that Allstate owed the Plaintiffs $10,000 under their coverage for other

No. 09-30209

structures. It thus assessed penalties on the sum of $338,000 (the dwelling policy limit) and $10,000, and awarded penalties in the amount of 25 percent of $348,000.

In deciding to calculate penalties on the entire "amount found to be due," the district court relied on our decision in *Grilletta*, in which we stated: "If part of a claim for property damage is not disputed, the failure of the insurer to pay the undisputed portion of the claim within the statutory delay will subject the insurer to penalties on *the entire claim*." 558 F.3d at 370 (emphasis added) (quoting *Sher v. Lafayette Ins. Co.*, 973 So. 2d 39, 60 (La. Ct. App. 2007)). Believing itself bound to the directive in this sentence—and thereby overlooking its specific context in *Grilletta*—the district court calculated penalties on the Plaintiffs' entire wind-damage claim, without discounting any amounts Allstate had timely paid.[14]

Allstate contends that the district court erred as a matter of law in its calculation of the penalty due. Its argument proceeds in two steps. First, Allstate argues that under Louisiana law, statutory penalties may never be based on amounts that were disputed in good faith. It reasons that because § 22:658 *liability* may not be imposed where an insurer disputes a claim in good faith, so *penalties* may not be assessed against amounts that were disputed in good faith. We expressly rejected this argument in *Grilletta*, 558 F.3d at 370. Allstate attempts to circumvent this precedent by asserting that *Grilletta* relied on an incorrect interpretation of *Louisiana Bag*. Second, in an extension of its

---

[14] Notably, the Plaintiffs did not seek additional payment on their contents claim at trial; Allstate paid the Plaintiffs' contents claim in full in November 2008. This explains why Allstate's payments on the Plaintiffs' contents claim were not included in the total "amount found to be due" for purposes of calculating § 22:658 penalties.

No. 09-30209

first argument, Allstate asserts that all of the amounts it has paid or must pay on the Plaintiffs' wind-damage claim were disputed in good faith, with only one exception: the $70,461.82 it untimely paid the Plaintiffs in December 2005. Allstate argues that the district court should therefore have assessed penalties on the $70,461.82 amount only.[15]

In the alternative, Allstate argues that at minimum, it should not be liable for penalties on the $10,000 it timely paid the Plaintiffs for damage to their dwelling on November 4, 2005. We consider this alternative argument first.

### a.    *"Partial payment or tender"*

Section 22:658(B)(1) provides in relevant part:

> Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . when such failure is found to be arbitrary, capricious or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of
>
> [1] twenty-five percent damages on the amount found to be due from the insurer to the insured . . . or
>
> [2] *in the event a partial payment or tender has been made*, twenty-five percent of the difference between the amount paid or tendered and the amount found to be due.

(emphasis added). The statutory text makes clear that an insurer is entitled to a reduced penalty where it has paid some portion of the insured's claim: in such a case, the "amount paid" is subtracted from the "amount found to be due" before applying the requisite percentage. *See La. Bag Co.*, 999 So. 2d at 1122 (finding

---

[15] Allstate thus contends that the proper amount of § 22:658 penalties in this case is 25 percent of $70,461.82, or $17,615.46.

No. 09-30209

insurer liable under § 22:658(B)(1) "for the difference between the amount paid, $1,000,000, and the amount found to be due, $3,266,309").

Equally clear, though not explicit in the statute, is that the reduced penalty provision applies if (and only if) the insured's partial payment complies with the statutory requirements—namely, it is tendered "within thirty days after receipt of satisfactory proofs of loss from the insured." § 22:658 (A)(1). *See Grilletta*, 558 F.3d at 370–71 (concluding insurer had not made "partial payment" under the statute because it "did not pay or tender anything to the Plaintiffs *within the statutory deadline*" (emphasis added)). Indeed, to conclude otherwise would effectively read out the statute's time-limit requirement—such an interpretation would, for instance, permit insurers who had untimely paid 100 percent of a insured's claim to avoid statutory penalties.

In this case, the district court concluded that Allstate's payment to the Plaintiffs on November 4, 2005, was timely, as it occurred within 30 days of Favel's estimate on the Plaintiffs' wind-damage claim. In calculating the statutory penalties due, the district court was therefore obligated to subtract from "the amount found to be due" the $10,000 Allstate had timely paid the Plaintiffs. Under the correct calculation, the penalty is 25 percent of $338,000, or $84,500. We accordingly modify the district court's penalty award from $87,000 to $84,500.

### b.    Sher, Louisiana Bag, *and* Grilletta

Turning to Allstate's central argument, we next consider how courts have assessed penalties under § 22:658. We do not interpret the penalty provision of § 22:658(B)(1) against a blank slate. The Louisiana Supreme Court has recently issued two decisions of relevance here, *Sher* and *Louisiana Bag Company*, and

29

No. 09-30209

we recently addressed this issue in *Grilletta*. As an initial matter, we reject outright Allstate's suggestion that we may ignore or otherwise disregard our holding in *Grilletta*. "It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by statutory amendment, or the Supreme Court, or our *en banc* court." *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). Allstate has pointed to no intervening law since *Grilletta* that would give us occasion to reconsider that decision, nor have we found any in our own research. Indeed, Allstate has not identified any relevant Louisiana case that interprets the phrase "amount found to be due" in the way it urges us to.

We also cannot agree with Allstate that *Grilletta* is inconsistent with *Sher* or *Louisiana Bag*. In fact, we conclude that all three cases are in accord with one another. We summarize the cases briefly.

In *Sher,* the Louisiana Fourth Circuit Court of Appeal concluded that the insurer, Lafayette Insurance Company, was liable for § 22:658 penalties because it had failed to pay an undisputed portion of Sher's claim. With respect to penalties, Lafayette argued that it should not be subject to penalties on the parts of the claim it had disputed in good faith. Lafayette thus noted that it had withheld payment in good faith on the plaintiff's business personal property (BPP) claim, and therefore should not be subject to penalties on that claim. The court rejected Lafayette's argument, agreeing with Sher that

> *whether [Sher's] claim for BPP was disputed in good faith is irrelevant* due to the fact that the failure to pay lost rents and property damage was in bad faith, which dictates that the trial court assess penalties on Mr. Sher's *entire claim* pursuant to *Warner*.

30

*Sher v. Lafayette Ins. Co.*, 973 So. 2d 39, 62 (La. Ct. App. 2007) (emphasis added) (citing *Warner v. Liberty Mut. Fire Ins. Co.*, 543 So. 2d 511 (La. Ct. App. 1989)). The Louisiana Supreme Court granted certiorari, adjusted the award for payment due, and similarly concluded that because "Lafayette failed to tender the undisputed portion of plaintiff's lost rents," it was liable for penalties on *the entire amount* the court determined was due under the contract. *Sher*, 988 So. 2d at 207.

In *Louisiana Bag*, the insurer sent the insured a $1,000,000 advance on an insurance claim before it had received satisfactory proof of loss. 999 So. 2d at 1110. Once it received the satisfactory proof of loss, however, the insurer failed to timely pay the balance due. The Louisiana Supreme Court concluded that the insurer was thus liable for § 22:658 penalties. The court calculated penalties on the difference between the amount ultimately found to be due, $3,266,309, and the $1,000,000 partial payment that was timely made. In doing so, the court noted that the insurer's failure to timely pay "any one of [the undisputed portions of the insured's claim] would have been sufficient to render [it] liable under La. R.S. § 22:658 for the difference between the amount paid, $1,000,000, and *the amount found to be due*, $3,266,309." *Id.* at 1122 (emphasis added).

Finally, in *Grilletta*, we held that § 22:658 penalties were due on the entire amount of the insured's claim, including amounts withheld and disputed in good faith. We rejected the insurer's argument—identical to the one Allstate makes here—that the phrase "amount found to be due" in the penalty provision means "that amount over which reasonable minds could not differ." 558 F.3d at 370. We also noted that while the insurer in *Louisiana Bag* had timely made partial

payment, the insurer in *Grilletta* "did not pay or tender anything to the Plaintiffs within the statutory deadline." *Id.* at 371. We therefore concluded the insurer was liable for penalties on the entire amount found to be due, without any subtraction for amounts paid. *Id.*[16]

In light of our prior decision in *Grilletta*, we conclude that the district court was correct to interpret "amount found to be due" in § 22:658 as the entire amount ultimately found to be due to the Plaintiffs.

### 3.   *Contents claim*

The Plaintiffs argue that Allstate untimely paid and untimely initiated loss adjustment on their contents claim and that they are therefore entitled to mandatory penalties under §§ 22:658(B)(1) and (B)(3). The district court, concluding that Allstate handled the claim in good faith, declined to assess penalties on the contents claim. We address each claim in turn.

### a.   *Timely payment of claim*

In the Plaintiffs' homeowners policy, the coverage for contents differs from the coverages for dwelling and other structures in one material respect: the provision for contents lists the covered losses. Coverage C is thus a "named-peril" provision: it names the perils covered—for instance, windstorm is a covered loss in the Plaintiffs' policy. Flood, on the other hand, is explicitly excluded from coverage. Coverages A and B do not similarly name the covered perils; they instead contain a blanket statement that losses are covered unless

---

[16] In *Grilletta*, we also stated in dicta that the "amount found to be due" means the "total amount of the Plaintiffs' loss." 558 F.3d at 371. To the extent that there is ambiguity in this statement, we take this opportunity to clarify that "amount found to be due" is, as the statutory text makes clear, the amount ultimately found to be owed by the insurer to the insured.

the policy excludes them.  This distinction is relevant for purposes of assigning the burdens of proof: in Louisiana, the insured carries the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril.  *Bayle*, 615 F.3d at 358; *see also Opera Boats, Inc. v. La Reunion Francaise*, 893 F.2d 103, 105 (5th Cir. 1990) ("When insurance is provided by a named-perils clause, the initial burden is on the insured to prove that loss occurred by the named peril."); *Doerr v. Mobil Oil Corp.*, 774 So. 2d 119, 123–24 (La. 2000) ("When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms.  On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause within a policy." (internal citations omitted)).  Accordingly, the Plaintiffs had the burden to demonstrate that the reimbursement they sought was for contents damaged by wind, and not by an excluded peril such as flood.

The record shows that although the Plaintiffs claimed general damage to contents in their initial loss report to Allstate, they did not submit an inventory of their damaged contents—a prerequisite to recovery—until February 2008, after litigation had commenced.  The Plaintiffs requested $88,926.37 on their contents claim.  Because the Plaintiffs did not make clear the cause of damage of each inventoried item, Allstate requested additional information from the Plaintiffs on their claim.  The Plaintiffs retained an expert, Marie de la Vergne, to assist with their contents claim, and with her help the Plaintiffs submitted a more detailed contents report in April 2008.  Allstate deposed Vergne in May 2008 to seek additional information on the Plaintiffs' loss.  Allstate also requested to depose the Plaintiffs regarding their contents claim, and they were

deposed on October 20, 2008.   On November 13, 2008, Allstate paid the Plaintiffs' contents claim in full.

The district court concluded that Allstate did not receive satisfactory proof of loss on the Plaintiffs' contents claim until at least October 2008, when the Plaintiffs were deposed.  On this record, we conclude that this determination is not clearly erroneous.  The Plaintiffs at all times bore the burden of establishing the contents damaged and their value, and that wind was the common cause of damage.   In addition, the Plaintiffs had the burden of proving when Allstate received satisfactory proof of loss.  *See Sher*, 988 So. 2d at 206 ("One who claims entitlement to penalties and attorney fees has the burden of proving the insurer received satisfactory proof of loss as a predicate to a showing that the insurer was arbitrary, capricious, or without probable cause.").  The Plaintiffs have not sufficiently demonstrated that Allstate received satisfactory proof of loss prior to October 2008.   Nor have they adduced any evidence in support of their assertion that Allstate handled their contents claim in an arbitrary or capricious manner.

### b.    *Timely initiation of claim*

The Plaintiffs additionally claim that they are entitled to § 22:658 penalties because Allstate allegedly failed to initiate loss adjustment on the contents claim in a timely manner.  Section 22:658(A)(3) provides in relevant part:

> In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant.  Failure to comply

No. 09-30209

> with the provisions of this Paragraph shall subject the insurer
> to the penalties provided in R.S. 22:1220.[17]

The initiation of loss adjustment "requires that the insurer take some substantive and affirmative step to accumulate the facts that are necessary to evaluate the claim." *Talton v. USAA Cas. Ins. Co.*, 981 So. 2d 696, 706 (La. Ct. App. 2008) (internal quotation marks omitted) (citing *Hollier v. State Farm Mut. Auto. Ins. Co.*, 799 So. 2d 793, 797 (La. Ct. App. 2001)). "A reasonable interpretation of these two statutes [§ 22:658(A)(3) and § 22:1220] indicates that in order to subject an insurer to penalties for failing to initiate loss adjustment in a timely manner, the insurer must be found to have breached the duty of good faith." *Oubre v. La. Citizens Fair Plan*, 53 So. 3d 492, 505 (La. Ct. App. 2010).

The Plaintiffs contend that Allstate untimely initiated loss adjustment on their contents claim because Allstate waited 38 days from notification to assign a contents adjuster to the Plaintiffs' claim. Allstate responds that it initiated loss adjustment on the contents claim in late September 2005—within 30 days of notification—when Favel went to the Plaintiffs' home to investigate all of the Plaintiffs' claims under their homeowners policy. This factual dispute was squarely presented below, as the district court permitted the Plaintiffs to amend the joint pre-trial order to add this issue to the list of contested issues of fact for trial. At the conclusion of trial, the district court found that Allstate had not acted in bad faith with respect to the contents claim and therefore was not liable for any penalties on that claim. Having reviewed the record, we find no clear error on this finding.

---

[17] Section 22:1220(C) in turn generally provides for penalties "in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater."

35

No. 09-30209

## IV.  CONCLUSION

In sum, we affirm the judgment of the district court in (1) excluding the report and testimony of the Plaintiffs' expert Salvant; (2) awarding the Plaintiffs an additional $123,000 in wind damage to their dwelling; (3) concluding that the terms of the Extended Limits Endorsement and the Additional Living Expenses provisions do not apply to the Plaintiffs; (4) concluding that the Plaintiffs are not entitled to § 22:1220 damages; (5) concluding that the 2003, not 2006, version of § 22:658 apply to the Plaintiffs' claim; (6) awarding penalties on the Plaintiffs' wind damage claim to their dwelling and other structures, as modified from $87,000 to $84,500; and (7) finding that Allstate was not liable for penalties on the Plaintiffs' contents claim.

AFFIRMED as MODIFIED.