# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-30328

United States Court of Appeals
Fifth Circuit

**FILED**

December 17, 2014

Lyle W. Cayce
Clerk

FLOYD HAMILTON, III,

Plaintiff-Appellant,

v.

SHIVANI NEGI; HOLLIS REED; BARBARA WATKINS;
UNITED STATES OF AMERICA,

Defendants-Appellees.

Appeal from the United States District Court
Western District of Louisiana
USDC No. 1:09-CV-860

Before STEWART, Chief Judge, and BARKSDALE and GRAVES, Circuit
Judges.

PER CURIAM:*

Plaintiff-Appellant Floyd Hamilton, III, ("Floyd"), brought suit against
Defendants-Appellees, Shivani Negi, Hollis Reed, Barbara Watkins, and the
United States (collectively, "Defendants-Appellees"), under the Federal Tort
Claims Act ("FTCA") asserting medical malpractice and other related claims.
The district court rendered judgment in favor of Defendants-Appellees and
dismissed Floyd's claims with prejudice. We affirm.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-30328

**I.**

Military veteran Floyd Hamilton, Jr. ("Mr. Hamilton") was in his eighties while he was a patient at the Veterans Affairs Medical Center ("VAMC") in Alexandria, Louisiana. After a prolonged stay at the VAMC—July 2006 through May 2009—Mr. Hamilton died there on May 20, 2009. Prior to his admission to the VAMC, Mr. Hamilton was a heavy smoker and suffered from multiple health ailments, including hypertension and a history of stroke. Due to health complications, he was admitted to the VAMC emergency room in July 2006, and shortly thereafter, was transferred to the Houston VAMC where he underwent a left carotid endarterectomy. While recovering from surgery, Mr. Hamilton developed more health complications and was transferred back to the Alexandria VAMC. Dr. Mark St. Cyr, a board-certified internist and VAMC hospitalist, began treating Mr. Hamilton on September 1, 2006, and acknowledged at trial that his prognosis at that time was poor. Dr. St. Cyr discussed this issue with Floyd who insisted that Mr. Hamilton remain at full code status[1] and receive every means of support.

During the first three weeks of September 2006, Dr. St. Cyr treated Mr. Hamilton for a variety of health problems including multiple cardiac arrests, respiratory distress, pneumonia, heart and blood pressure problems, agitation, and lack of responsiveness. During this period, Mr. Hamilton was intubated, transferred to the intensive care unit ("ICU"), placed on a ventilator, and treated with intravenous antibiotics and fluids. Floyd was informed of these events but he reiterated his desire that Mr. Hamilton remain at full code status.

---

[1] "Full code status" means that the patient will continue to receive all resuscitative measures should an end-of-life situation occur.

2

No. 14-30328

On Friday, September 22, 2006, Dr. St. Cyr saw Mr. Hamilton and determined that his long-term prognosis was still poor. During that visit, he observed lack of responsiveness and a Glasgow Coma Scale ("Glasgow") score of 3.[2] Dr. St. Cyr elected not to extubate Mr. Hamilton at this time due to his low Glasgow score and because he believed Mr. Hamilton would be unable to breathe on his own. Dr. St. Cyr noted his reasons for keeping Mr. Hamilton intubated but did not leave orders instructing subsequent physicians to keep Mr. Hamilton intubated. He also noted at this time that another discussion should take place with Floyd about putting Mr. Hamilton on DNR, *i.e.*, do not resuscitate, status.[3]

Dr. Shivani Negi, an internist at the VAMC, was an on-call physician covering the ICU during the weekend of September 23, 2006. She first examined Mr. Hamilton on Saturday, September 23, and testified that she reviewed his medical chart and conducted a clinical examination, which showed stable vitals and no signs of active infection. She observed that he had been breathing on continuous positive airway pressure for three days and was "tolerating [it] well," which told her that he could breathe on his own and was stable enough for extubation.

Dr. Negi called Floyd to discuss the extubation and he stated that he wanted "everything done" and reiterated his desire that Mr. Hamilton remain at full code status. Dr. Negi then determined that the family's consent was not required in order to extubate Mr. Hamilton and that neither his low Glasgow score nor Dr. St. Cyr's notes precluded extubation. Later that morning, Mr. Hamilton was extubated.

---

[2] Glasgow Coma Scale measures a patient's level of consciousness and is based on a nurse or physician's subjective assessment. Patients with a score of 3–8 are usually said to be in a comatose state.

[3] Floyd had power of attorney for Mr. Hamilton.

No. 14-30328

Following the extubation, Mr. Hamilton remained in the ICU where he received one-on-one supervision for approximately 24 hours. Dr. Negi saw Mr. Hamilton again on the morning of Sunday, September 24, and noted that he was "doing well" but was not "waking up." She testified that she considered Mr. Hamilton's neurological status, examined his vital signs and secretions levels, and looked for other signs of continued infection, including fever, but that he showed no signs of active infection upon examination. Dr. Negi then concluded that Mr. Hamilton was stable enough to be moved out of the ICU and for his antibiotic coverage to be discontinued.

Mr. Hamilton was transferred out of the ICU to a room on the fourth floor where one-on-one supervision was not available. Dr. Negi issued detailed transfer orders pertaining to Mr. Hamilton's care upon transfer. That night, Mr. Hamilton was seen by Dr. Rakiya Akwa, another on-call physician, who observed that his condition was worsening and restarted him on antibiotics. He noted that if Mr. Hamilton's condition continued to deteriorate, he should be transferred back to the ICU, however, he remained stable overnight.

On Monday, September 25, 2006, Dr. St. Cyr resumed treatment of Mr. Hamilton. He determined that Mr. Hamilton's condition had worsened since his previous visit and transferred him back to the ICU. He also ordered that Mr. Hamilton be reintubated and placed on a ventilator.

Mr. Hamilton's remaining years at the VAMC were complicated by pneumonia, sepsis, a recurrent pneumothorax that required chest tube placement, difficulty breathing and the continued need for ventilator support, urinary tract infections, gastrointestinal bleeding requiring transfusions, renal failure, ventricular tachycardia, hypotension, and skin breakdowns. Despite repeated conversations between Floyd and VAMC personnel, Mr. Hamilton was never moved to a community nursing home or long-term acute care facility. He remained at the VAMC where he received long-term

4

No. 14-30328

supportive care until he was pronounced dead after cardiac arrest on May 20, 2009. His autopsy revealed that he had bullous emphysema and invasive adenocarcinoma of the lung.

After Mr. Hamilton's death, Floyd filed suit in district court pursuant to the FTCA against Dr. Negi, Dr. Hollis Reed, Ms. Barbara Watkins, and the United States. *See* 28 U.S.C. § 2671, *et seq.* Floyd argued that Dr. Negi breached the standard of care during the weekend of September 23, 2006 by: (1) extubating Mr. Hamilton, (2) discontinuing his antibiotics, (3) transferring him out of the intensive care unit, and (4) failing to obtain Floyd's informed consent prior to doing these things. Additionally, Floyd alleged that Dr. Negi obtained her medical license through fraud.[4]

After a *Daubert* hearing and three-day bench trial, the district court ruled in favor of Defendants and dismissed Floyd's claims with prejudice. In its reasons for judgment, the district court concluded that the expert testimony and evidence in the record supported that Dr. Negi's medical decisions—to have Mr. Hamilton extubated, discontinue his antibiotics, and to transfer him out of the ICU—did not fall below the applicable standard of care. Additionally, the expert testimony and VAMC guidelines supported Dr. Negi's decision to do these things without obtaining Floyd's prior informed consent.

Because it found that Dr. Negi did not breach the standard of care and did not have a duty to obtain Floyd's informed consent, the district court found it unnecessary to address the element of causation or Floyd's arguments with regard to Dr. Negi's license and credentialing. Floyd filed the instant appeal.

---

[4] In addition to this suit, Floyd brought a separate suit in federal district court against Dr. Negi with respect to his claims that she obtained her medical license through fraud and that suit was dismissed for lack of jurisdiction over the Virginia licensing authorities. *See Hamilton v. Negi*, 13-cv-0041, 2013 WL 2444559, at *3 (W.D. La. 6/4/13).

No. 14-30328

## II.

Proceeding *pro se* on appeal, Floyd challenges the district court's judgment that Dr. Negi did not breach the applicable standard of care when she extubated Mr. Hamilton, discontinued his antibiotic coverage, and transferred him out of the ICU. Floyd also argues that the district court erred in failing to find that Dr. Negi obtained her medical license[5] through fraud.[6]

## III.

Following a bench trial, this court reviews a district court's factual findings for clear error and its conclusions of law de novo. *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011) (citation omitted).

After considering the parties' arguments as briefed on appeal, and after reviewing the record, the applicable law, and the district court's judgment and reasoning, we AFFIRM the district court's judgment and adopt its analysis in full.

---

[5] We agree with the district court's decision to pretermit discussion of Floyd's claim that Dr. Negi obtained her medical license through fraud in light of its finding that Dr. Negi did not breach the applicable standard of care.

[6] Floyd also includes the following language in his statement of the issues in his appellate brief: "did Attorney Broadwell commit unethical acts to protect Dr. Negi and VA Alexandria from future suits" and "also at Issue is had Dr. Negi commit similar acts of omission and commission that showed a PROOF OF PATTERN." Assuming that Floyd intended for these statements to be considered by this court as assignments of error, we hold that his arguments on these issues are waived due to inadequate briefing on appeal. *See United States v. Whitfield*, 590 F.3d 325, 346 (5th Cir. 2009).