**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 3, 2011

Lyle W. Cayce
Clerk

No. 10-10665

THE BARRINGTON GROUP, LIMITED, INC.,

Plaintiff-Appellee,

v.

CLASSIC CRUISE HOLDINGS S DE RL, doing business as Regent Seven
Seas Cruises,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas (Dallas Div.)
USDC 3:08-cv-01813-B

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

At issue in this appeal is whether the district court correctly concluded
that Plaintiff-Appellee The Barrington Group, Limited, Inc. (Barrington) acted
in a commercially reasonable manner, as required by the Uniform Commercial
Code (U.C.C.), when it decided to continue the manufacture of goods ordered,
and subsequently cancelled, by Defendant-Appellant Classic Cruise Holdings
(Classic Cruise).  We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-10665

This case involves a contract dispute. Regent Seven Seas Cruises (Regent), now owned by Classic Cruise,[1] had placed a number of orders with Barrington for the purchase of various gift and promotional items for its cruise ship passengers. Subsequently, Classic Cruise contacted Barrington and cancelled two orders, Invoice Nos. 80107 and 80109, indicating that it had a problem with the price. Barrington proceeded to complete the manufacture of the goods listed in those two invoices and sued Classic Cruise for breach of contract. After a bench trial, the district court held that Barrington had acted in a commercially reasonable manner under the U.C.C. and entered judgment for Barrington for the full contract price plus interest. This appeal followed.

I.

Barrington is a Dallas-based company selling custom leather goods that are embroidered, engraved, or embossed with the customer's company logo for the corporate gift market. David Gowdey is the CEO and co-founder of Barrington. Barrington's leather goods are manufactured by a separately owned Chinese company called Barrington Handicrafts Co. at a facility in Xiamen, China. Ben Briggs manages the day-to-day operations of this facility. Barrington obtains non-leather gift items, such as crystal pieces, clothing, and watches, from third parties located in the United States and China. Barrington commonly uses a Chinese company called Convergent Sourcing to procure non-leather goods from various other third parties.

Over the years, Regent had used Barrington to provide it with gifts and promotional items for its cruise ship customers. After Classic Cruise bought Regent, it reviewed its outstanding orders with Barrington and decided that the price for the ordered gifts was too high. Classic Cruise accepted three invoices and paid Barrington in full upon delivery, but on September 26, 2008, Classic

---

[1] On or about January 31, 2008, Classic Cruise purchased Regent and began operating cruises under the Regent brand name.

No. 10-10665

Cruise, via e-mail, informed Barrington that it would be cancelling two orders, Invoice Nos. 80107 and 80109, set for delivery in December. Upon receiving this e-mail, Barrington arranged for a meeting with Classic Cruise. Barrington's CEO, Gowdey, attended a meeting with representatives from Classic Cruise on October 2, 2008 in Florida. On October 8, 2008, Classic Cruise confirmed that the "decision makers" were "firm on cancelling all pending orders." On October 10, 2008, Barrington filed the instant lawsuit.

At trial, Gowdey testified that many of the items in Invoice Nos. 80107 and 80109 needed to be shipped out of China by October 26, 2008, in order to be set for their delivery dates in December. He also testified that due to a Chinese holiday, the schedule for getting the items ready by October 26, 2008 was compressed. He testified that many of the items in the two invoices could not be cancelled, that he would have cancelled the items if he could have done so, and that he did cancel items when possible. Classic Cruise objected to the testimony, contending that it was based on hearsay, namely, statements made by lower-level employees to Gowdey about the existence of third-party contracts, and whether Barrington could cancel them. The district court overruled the objections, stating that the court was admitting the statements as "information acted upon" and not for the truth of the matter asserted. On cross-examination, Classic Cruise elicited testimony from Gowdey that he did not have personal knowledge of the third-party contracts, only that he had relied on statements by his employees. One of those employees was Phillip Wright. Wright testified that he was responsible for ordering the goods listed in the two invoices at issue, and that he ordered many of those goods from third parties. In addition to testimony from Gowdey and Wright with respect to the items listed in the two invoices, the district court reviewed a number of e-mails, including correspondence from Briggs that also supported Gowdey's testimony regarding the third-party contracts.

No. 10-10665

After the bench trial, the district court issued its Findings of Fact and Conclusions of Law. The district court found that the goods at issue were "specially manufactured," and that, at the time of cancellation, the goods were in "various stages of manufacture or assembly," and were "incomplete goods" as described by Section 2.704(b) of the Texas Business and Commerce Code. The district court also found that, at the time of repudiation, "Barrington had incurred contractual obligations to third parties for the manufacture, procurement, or assembly of the goods at issue" because "Gowdey's testimony on Barrington's obligations to third parties [is] credible," and that "[o]ther evidence, such as correspondence with Briggs and the testimony of Wright, also supports this conclusion." In its conclusions of law, the district court held that, given the compressed time-line for delivery, Barrington's contractual obligations to various manufacturers, the specially manufactured goods involved, and the inability of Barrington to cancel some items, it was commercially reasonable for Barrington to continue its manufacture of the goods in the two invoices and sue for contract price. The district court also held that "Barrington was not required to breach its contracts with third parties to meet the standard for commercially reasonable behavior in this case."

II.

Section 2-704(b) of the U.C.C., adopted as Tex. Bus. & Com. Code Ann. § 2.704, determines the appropriate damages calculation for incomplete goods. That section states that a seller may "in the exercise of reasonable commercial judgment for the purposes of avoiding loss and of effective realization," either (i) complete the manufacture and bring an action for the price under § 2.709, or (ii) "cease manufacture and resell for scrap or salvage value or proceed in any other reasonable manner," receiving damages under § 2.708. Tex. Bus. & Com. Code Ann. § 2.704 (Vernon 1968); James J. White & Robert S. Summers, Uniform Commercial Code § 7–15 (6th ed. 2010).

4

No. 10-10665

Whether the seller should complete the manufacture depends on the exercise of the seller's reasonable commercial judgment. *See Foxco Indus. Ltd. v. Fabric World, Inc.*, 595 F.2d 976, 983 (5th Cir. 1979). The burden of proving that a seller's actions were unreasonable is on the buyer. U.C.C. § 2-704 cmt. 2. The question of the seller's reasonable judgment is evaluated "on the basis of the facts of the particular case as they appeared at the time he made his decision, rather than by an after-the-fact determination of whether those acts increased or decreased the damages claimed." 12 Am. Jur. 2d *Proof of Facts* 2d § 179 (1977). Here, after a bench trial, the district court held that, based on its factual findings, Barrington acted in a commercially reasonable manner when it decided to complete manufacture of goods ordered by Classic Cruise. We review a district court's findings of fact following a bench trial under a clearly erroneous standard, giving "due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6). We review de novo a district court's conclusions based on such findings of fact. *See French v. Allstate Indemnity Corp.*, 637 F.3d 571, 577 (5th Cir. 2011).

The district court identified a number of reasons supporting its holding that Barrington acted in a commercially reasonable manner. The district court noted that "the evidence showed a compressed time-line for delivery; that Barrington had contractual obligations to various manufacturers; that the goods were specially manufactured and have no standard market or resale value; and that the goods would be of little or no value after the cruise ships sailed. The evidence further showed that Barrington cancelled some items, but was unable to cancel others."

Classic Cruise contends that the district court erred in concluding that Barrington acted in a commercially reasonable manner because it relied in part on a factual finding that Barrington had incurred contractual obligations to third parties. Because that factual finding was based in part on testimony from

5

No. 10-10665

Gowdey, Classic Cruise contends that this finding was erroneous. Classic Cruise argues that because Gowdey admitted at trial that he had no personal knowledge of the third-party contracts, and because Barrington did not submit into evidence any third-party contract involving the goods at issue, Gowdey's testimony was based on inadmissible hearsay.[2] Therefore, according to Classic Cruise, because the district court's conclusion that Barrington acted in a commercially reasonable manner is based in part on inadmissible hearsay, we should vacate the district court's order. We disagree.

The district court's factual finding that Barrington had "incurred contractual obligations to third parties" for the manufacture of the goods at issue was not clearly erroneous. To the extent that Classic Cruise argues that the district court relied on inadmissible hearsay, that assertion is incorrect. The district court admitted statements made to Gowdey for a non-hearsay

---

[2] Classic Cruise also asserts that the district court applied the wrong legal standard in determining whether Barrington acted in a commercially reasonable manner under the U.C.C. Classic Cruise contends that under *Lakewood Pipe of Texas, Inc. v. Conveying Techniques, Inc.*, 814 S.W.2d 553, 556 n.2 (Tex. App.—Houston [1st Dist.] 1991, no writ), the manufacture of goods should be completed only if, at the time of cancellation, the exercise of reasonable commercial judgment would indicate that the completed goods can be readily resold at a price that meets or exceeds the costs of completion. This is an incorrect reading of *Lakewood*. As an initial matter, in *Lakewood*, because the seller ceased manufacture of the incomplete goods upon cancellation by the buyer, the issue of whether the seller acted in a commercially reasonable manner by completing manufacture of the goods was not before the court. *See id.* at 555. Indeed, the *Lakewood* court expressly stated that Tex. Bus. & Com. Code Ann. § 2.708(b) applies "to all cases in which the seller properly discontinues manufacture of goods because of buyer's breach." *Id.* at 556. Here, Barrington reasonably decided to complete manufacture of the goods, so § 2.708(b) is inapplicable. Moreover, the footnote in *Lakewood* that Classic Cruise cites to, aside from being dicta, merely states that if the seller can mitigate damages by completing manufacture and reselling the product, then the seller should do so, and if he cannot resell the goods, he should cease manufacture. *See id.* at 556 n.2. This statement does not necessarily mean that cessation is always commercially reasonable where the seller would be unable to resell the goods or that completion is commercially reasonably only if the goods can be resold. *See Foxco*, 595 F.2d at 983 (holding that seller acted in a commercially reasonable manner by completing production of a specialized good where resale was not possible). Moreover, in *Lakewood*, the seller was in control of the manufacturing process; many of the goods here were manufactured by third parties.

6

purpose—to show the effect of those statements on Gowdey and his decision to complete the manufacture of the items in the two invoices. *See, e.g.*, Fed. R. Evid. 801; *Curtis Lumber Co. v. La. Pacific Corp.*, 618 F.3d 762, 783 n.18 (8th Cir. 2010); *United States v. Smalls*, 605 F.3d 765, 786 n.18 (10th Cir. 2010). As the district court stated, this was "information acted upon" and not admitted for the truth of the matter asserted. As CEO, Gowdey could reasonably rely and act on information that his employees provided to him regarding third-party contracts when deciding whether it was commercially reasonable to complete manufacture of the incomplete goods at the time of the repudiation by Classic Cruise. Gowdey was not required to ask his employees for hard copies of the third-party contracts before making such a decision, especially where there is no indication in the record that his employees were not telling the truth.

In addition to Gowdey's testimony, there was direct evidence presented at trial of the existence of the third-party contracts. Wright testified that he had personal knowledge of the third-party contracts and was in charge of ordering the items in the two relevant invoices. Moreover, the district court also relied upon the correspondence with Briggs—correspondence that supported the district court's conclusion that Barrington had incurred contractual obligations to third parties. Therefore, the district court's factual finding as to the third-party contracts was not error, much less clear error. Because Classic Cruise has failed to show that the district court's conclusion that Barrington acted in a commercially reasonable manner was based on clearly erroneous factual findings, we AFFIRM.