# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30990
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
March 30, 2017

Lyle W. Cayce
Clerk

SERVICE STEEL WAREHOUSE COMPANY, L.P.,

      Plaintiff - Appellee

v.

MCDONNEL GROUP, L.L.C.; ARCHER WESTERN CONTRACTORS,
L.L.C., formerly known as Archer Western Contractors, Limited;
MCDONNEL GROUP, L.L.C. ARCHER WESTERN CONTRACTORS, L.L.C.,
a Joint Venture,

      Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:14-CV-1416

Before KING, DENNIS, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:*

    Service Steel Warehouse Company, L.P. brought this lawsuit against a general contractor seeking payment on a reliance theory for deliveries of steel to a subcontractor. The general contractor is a joint venture to build a jail

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30990

between McDonnel Group, L.L.C. and Archer Western Contractors, L.L.C. (McDonnel-Archer). As found by the district court after a bench trial, Service Steel detrimentally relied on a promise by McDonnel-Archer to pay for steel it delivered to the subcontractor when McDonnel-Archer did not later come through with the money. McDonnel-Archer appeals, arguing that the district court should not have found Service Steel reasonably relied and changed its position based on its promise and, in the alternative, should have offset Service Steel's recovery for failure to mitigate damages. Because the findings of the district court are supported by the record, we will not second guess its determination of reasonable reliance. With respect to mitigation, McDonnel-Archer rehashes its position on reasonable reliance and so also stumbles on the factual findings made by the district court.

**I.**

McDonnel-Archer contracted to build a new jail for Orleans Parish. It hired H&H Steel Fabricators, Inc. as the subcontractor for fabricated steel. H&H purchased unfinished steel from Service Steel. During the course of the project, it ceased paying Service Steel. In response, Service Steel threatened to stop further deliveries and to pick up steel it had already delivered, as it had a right to do. To keep Service Steel happy, McDonnel-Archer offered to add Service Steel to the bond on the jail construction project and to make its checks to H&H jointly payable to Service Steel. Service Steel accepted both benefits but demanded more security in order to stay on board. McDonnel-Archer sent an email promising to pay Service Steel for material currently stored by H&H as well as future deliveries to H&H, fifty percent to be paid as soon as the steel reached H&H and the other fifty percent once the steel was delivered to the jail site. This is the promise that Service Steel claims it relied on to its detriment.

2

No. 16-30990

Service Steel continued to sell and ship steel to H&H, all of which was ultimately delivered into the hands of McDonnel-Archer for the jail. McDonnel-Archer made some payments but did not pay for all the steel; it complains that the amount of material received exceeded its needs so that much of the metal was never actually put into the building. Service Steel brought this lawsuit seeking to be paid as McDonnel-Archer promised in its email.

## II.

Under Louisiana law, to establish detrimental reliance, a party must prove the following: "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance." *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 334 (5th Cir. 2007).

McDonnel-Archer disagrees with the district court's finding as to the third element. It asserts that it was not reasonable for Service Steel to continue selling and shipping steel in reliance on its promise. In the alternative, it contends that it became unreasonable for Service Steel to rely at some point in the relationship when Service Steel should have suspected that the steel it was shipping was more than the jail project needed.

McDonnel-Archer tells us that we can ignore the district court's reasonableness finding and make our own decision after reading the trial record. This is not a correct view of our appellate role; we do not write on a clean slate. The reasonableness of relying on someone else's statement is a question of fact. *Id.* at 333. We review questions of fact decided after a bench trial for clear error. *See id.* at 333; *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011). Because of our deference to the district court, we will reverse "only if we have a definite and firm conviction that a mistake has been

3

committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

The district court heard and understood McDonnel-Archer's defense but found the facts disagreed with it. The district court determined that it "was not until after Service Steel had delivered all of the requested steel to H&H and McDonnel-Archer had received all of the fabricated steel from H&H that McDonnel-Archer for the first time informed Service Steel that it had to prove incorporation of its steel in order to be paid." Speaking directly to McDonnel-Archer's argument that Service Steel should have noticed "red flags" that it was shipping excess steel, the trial court held, "Tracking the amount of steel required for the Project, however, was not Service Steel's responsibility." This conclusion was supported by factual findings that McDonnel-Archer does not controvert. For instance, the district court found that "Service Steel could not know whether H&H was over-ordering steel as it did not know the total amount of steel required," and that "McDonnel-Archer was in the best positon to know the steel expected for the Project and the steel delivered to H&H, as McDonnel-Archer had full access to H&H's information."

McDonnel-Archer's argument that Service Steel ignored red flags is vitiated by the above conclusions of the district court. The builder also points to a letter it received from Service Steel asserting a statutory lien on the materials it had provided. It argues that the letter shows Service Steel must have known it needed to prove that the steel was actually put into the building to get paid because this is a requisite of the statutory lien in question. This is weak soup—much too weak to overcome the deference we owe to the district court. Just as McDonnel-Archer makes alternative arguments in this appeal, the fact that Service Steel sought a statutory lien but has later pursued recovery on a reliance theory is more plausibly proof of caution and diligence

by its attorneys than it is of an expectation that McDonnel-Archer would only pay for metal incorporated into the jail.

McDonnel-Archer also challenges the district court's finding on the fourth element—a change in position to one's detriment because of the reliance. It says that "not a single demand letter or claim letter from Service Steel references that email or any representations by McDonnel-Archer." To support this assertion, it cites Service Steel's initial complaint in this suit (in which the email promise was not mentioned) and a letter that only asserted a statutory lien. Against this, we have the finding of the district court that "even after the Bond rider and Joint Check Agreement were issued, Service Steel informed both H&H and McDonnel-Archer that, if it was not paid, it would pick up the steel and stop selling steel for the project." As a result, the district court found that it was not until after McDonnel-Archer's email promise to pay for past and future deliveries of steel to H&H that "Service Steel left the Stored Material with H&H and continued to sell them steel it ordered for the Project." Once again, Service Steel's use of alternative theories in its quest for payment does not demonstrate that it did not change its position as a result of the email promise, much less imply that conclusion with sufficient force for us to displace the district court's findings of fact.

Lastly, we consider the mitigation argument. The district court said nothing about mitigation in its findings of fact and conclusions of law—likely because McDonnel-Archer's mitigation argument is scarcely distinguishable from its arguments on liability. In its brief, McDonnel-Archer tells us that its reasons for both contentions are identical:

> For the same reasons and based on the same facts discussed above, Service Steel's damages should be reduced because Service Steel failed to mitigate those alleged damages. The district court should not have allowed, and McDonnel-Archer urges that this Court should not allow, Service Steel to sit idly by when Service Steel

No. 16-30990

had knowledge, both based on its own information and information that McDonnel-Archer provided it, that some of the material that Service Steel had provided and was providing to H&H might not have been delivered to the Project.

But these same reasons run into the same wall—the district court's finding that "Service Steel could not know whether H&H was over-ordering steel as it did not know the total amount of steel required." For the same reasons and based on the same findings of fact discussed above, the mitigation argument fails.

\* \* \*

We AFFIRM.